Kenneth Dwayne DUNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 70505.

Court of Criminal Appeals of Texas,
En Banc.

May 15, 1991.

Rehearing Overruled Sept. 18, 1991.

Kenneth P. Mingledorff, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Timothy G. Taft, Russell Hardin & Joe Magliolo, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

Appellant was convicted of capital murder pursuant to V.T.C.A. Penal Code, § 19.-03(a)(2). Death was imposed by the trial court after the jury returned affirmative findings to both special issues submitted under Article 37.071(b)(1) and (2), V.A.C.C.P. Direct appeal to this Court was automatic. We will affirm appellant's conviction.

Appellant raises twenty-three points of error. In point of error twenty-one, appellant challenges the sufficiency of the evidence to support the jury's verdict of guilty. Specifically, appellant alleges that there was insufficient evidence to demonstrate that he intentionally committed the offense of murder in the course of a robbery, or an attempted robbery, thereby precluding a conviction for capital murder.[1]

The indictment alleges that appellant, on or about March 17, 1980, "while in the course of committing and attempting to commit robbery of GREGORY PUTMAN, intentionally cause[d] the death of MADELINE RAE PETERS by shooting MADELINE RAE PETERS with a gun." Since appellant challenges the sufficiency of the evidence resolution of this issue requires a detailed recitation of the facts.

The testimony reveals that on March 17, 1980, at approximately 11:00 a.m., a gunman identified as appellant, entered Almeda Bank in Harris County. Upon entering he surreptitiously approached Ray Valenta, an off duty Houston police officer, working as a security guard for the bank. Carolyn Warren, a patron of the bank, described appellant's initial entry as being made on the balls of his feet while toting a gun held high and heading directly for Valenta, whose back was to appellant. Valenta was at the time of appellant's approach engaged in a conversation with the receptionist and was unaware of appellant's presence. Appellant disarmed Valenta and ordered him face down on the floor. Valenta, now relieved of his weapon and staring at appellant's cocked .45 pistol, obeyed appellant's command.

Greg Putman, a vice president of the bank, testified that he was in the note department giving the department a payment for one of his customers when he noticed appellant coming towards him yielding two revolvers. When appellant reached Putman, who was directly behind the teller cages, appellant had one gun in

---

1. We observe that this is appellant's second direct appeal for the offense of capital murder based upon the March 17, 1980 incident which resulted in the initial indictment. The first judgment of conviction was reversed by this Court in *Dunn v. State,* 733 S.W.2d 212 (Tex.Cr. App.1987), and remanded to the trial court.

his hand pointing straight in Putman's face. Putman then related that appellant had a cloth bag in his hand and dropped it on the counter and told him [Putman] to fill it up and put all the money in the bag. Putman's testimony indicated he was positioned near the tellers' windows when appellant advanced. They approached the first teller and appellant directed her to put the money in the bag. After that transaction, according to Putman, both he and appellant moved down to the next teller window, where the teller was on a lunch break so Putman retrieved the money and they then proceeded to the teller window operated by the deceased, Madeline Peters.

When they arrived at Madeline Peters' window she was on the computer telephone. Appellant told her to "put all the money in the bag," and at the same time, with his finger on the trigger and the hammer cocked, he placed the gun in the teller cutout. At that time Ms. Peters responded, "what?" With the gun aimed at Peters, appellant shot her in the head.

To buttress Putman's testimony, among the witnesses called by the State was Lamar Dace, who was in Madeline Peters' line about to transact business when the individual identified as appellant demanded that he "get back" and pointed the gun right at Peters' head and then fired the weapon. During this entire episode the evidence indicates that appellant would periodically aim one of the revolvers directly at Valenta to keep him from moving from his face down position on the floor.

■ To recapitulate, it is appellant's precise contention that the evidence was insufficient to demonstrate that appellant intentionally committed the murder.[2] Appellant makes no challenge as to the sufficiency of evidence to establish that the homicide occurred in the course of the commission or attempted commission of a robbery, rather his sole dispute centers on whether the act which resulted in the death of Madeline Peters was intentional so as to warrant a conviction for capital murder. Appellant argues that in this respect the evidence was insufficient. Naturally, it is incumbent upon the State to prove each and every element of the crime beyond a reasonable doubt. When the State seeks to obtain a conviction pursuant to § 19.-03(a)(2), supra, it is mandatory that it establish beyond a reasonable doubt that the accused *intentionally* committed a killing in the course of one of the enumerated felonies set out in the statute and as alleged in the indictment. In determining sufficiency of the evidence we will view the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989), *Thompson v. State,* 691 S.W.2d 627, 630 (Tex.Cr.App.1984), *Ransom v. State,* 789 S.W.2d 572, 576 (Tex. Cr.App.1989).

■ Applying the *Jackson* criteria to the facts of this case we find that a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally caused the death of the deceased.[3] Among the facts the jury could have reasonably considered to determine that the appellant intentionally caused the death of Madeline Peters are: (1) the appellant entered the Bank of Almeda armed with a per se deadly weapon, a .45 caliber pistol; (2) no effort was made by appellant to conceal the weapon, rather it was exposed from the onset of the crime and ready for use; (3) appellant immediately approached the se-

---

2. In relevant part § 19.03(a)(2), supra, reads:
(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and: * * *
(2) the person *intentionally commits the murder* in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, or arson; ... [Emphasis added.]

3. V.T.C.A. Penal Code, § 6.03(a), defines the culpable mental state of intentionally as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

curity guard, Ray Valenta, stuck the gun in his back, disarmed him and compelled Valenta to lie face down on the floor; (4) throughout this entire ordeal Valenta was under the constant fear of death, as appellant would periodically aim one of the loaded weapons at him to prevent Valenta from foiling the robbery, while appellant was taking the money from the various tellers; (5) in the course of compelling Greg Putman in assisting him to obtain the money from the teller stations a gun was pointed straight at Putman's face; (6) when the two ultimately reached the deceased's teller station, appellant put the loaded weapon with his left hand in the teller cutout, aimed straight at Madeline Peters and fired the weapon when she responded "what?" to appellant's demand for the money; (7) according to the testimony, appellant had his finger on the triggers and both guns were cocked. Under these circumstances, we conclude that a rational jury could have believed that appellant had the conscious objective or desire to cause the death of the deceased. See *Dorough v. State*, 639 S.W.2d 479, 480 (Tex.Cr.App.1982). Point of error number twenty-one is therefore overruled.

 In point of error twenty-two, appellant contends that the evidence is insufficient to sustain the jury's affirmative finding to special issue number one.[4] Specifically, appellant challenges the sufficiency of the evidence to support an affirmative finding that appellant acted with deliberateness.

In *Kinnamon v. State*, 791 S.W.2d 84, 95–96 (Tex.Cr.App.1990), this Court recently opined:

> We recently noted that an affirmative finding on the first special issue that the conduct of the defendant was "deliberate" requires evidence that the defendant's conduct alone constituted a conscious decision, greater than mere will, to cause the victims death. *Nichols v. State*, 754 S.W.2d 185 (Tex.Cr.App.1988). Accordingly, a jury must find "a moment

of deliberation and the determination on the part of the actor to kill" before it is justified in answering "yes" to special issue number one. This determination may be found by the totality of the circumstances in each case. *Cannon v. State*, 691 S.W.2d 664, 677 (Tex.Cr.App. 1985), *cert. denied* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931. Deliberate conduct, however, need not be the result of a premeditated act. *Cannon*, supra, at 677; *Granviel v. State*, 552 S.W.2d 107, 123 (Tex.Cr.App.1976); *Fearance v. State*, 620 S.W.2d 577, 584, n. 6 (Tex.Cr. App.1981), *cert. denied* 454 U.S. 899, 102 S.Ct. 400, 70 L.E.2d 215.

We again utilize the familiar standard enunciated in *Jackson v. Virginia*, supra, and view the evidence in the light most favorable to the prosecution, to determine whether any rational jury could have found beyond a reasonable doubt that the appellant's conduct which caused the death of the deceased was committed "deliberately" with the reasonable expectation that her death would result. The evidence adduced at the punishment phase relevant to deliberateness is as follows: The State at this stage introduced appellant's confession which was given to Special Agent Homer Hoffman, Jr., of the F.B.I., in St. Louis, Missouri, where the appellant ultimately surrendered. Although appellant denied that he intentionally shot the deceased, he did relate to Hoffman his participation in the Almeda robbery and that he did indeed shoot Madeline Peters. The confession detailed how he instigated and planned the robbery, and how he was able to confiscate the weapon from a security guard at a convenience store. In addition the statement revealed that appellant had committed numerous other robberies, and other victims testified to appellant's involvement as the perpetrator of aggravated robberies where he had threatened their lives with a large caliber revolver. When the victim in the instant case hesitated, appellant opened fire. He entered the bank with a loaded gun and disarmed the bank security guard.

---

**4.** "[W]hether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; ..."
Article 37.071(b)(1), V.A.C.C.P.

When he reached Madeline Peters' teller station he pointed one of the weapons straight at her with his finger on the trigger and the gun cocked. Like in *Nichols v. State*, 754 S.W.2d 185, 202 (Tex.Cr.App. 1988), the evidence indicates that the killing was done by an experienced robber rather than an excited amateur. We find, from these facts, that the evidence was sufficient to support the jury's affirmative finding on the issue of appellant's deliberateness. The twenty-second point of error is overruled.

In appellant's first five intertwined points of error, he asserts that the trial court erred in presenting him with the "Hobson's Choice" of representing himself or accepting representation by Mr. Bob Hunt and Mr. Ruben Guerrero after the appellant informed the trial court of an ethical and actual conflict of interest between the appellant and these two attorneys, thus denying the appellant his right to effective assistance of counsel as guaranteed by both the Federal and State constitutions.[5]

In order to resolve the five points of error appellant raises in respect to the conflict with his court appointed attorney, it is necessary to recite the pertinent facts which lead to the appointment of the attorneys in question. The first pretrial motion heard by the trial court was appellant's pro se motion made pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), for self-representation.

After the trial court gave the required admonishments and instructed the appellant that it would not permit hybrid representation, he proceeded to query the appellant on standby counsel:

THE COURT: Do you understand, Mr. Dunn, that even over your objections this Court may appoint a standby counsel to aid you; and if and when you request help and be available to represent you in the event that termination of the right to represent yourself is necessary?

THE DEFENDANT: Yes.

THE COURT: And do you want this Court to appoint a standby counsel for this trial?

THE DEFENDANT: No, Sir.

THE COURT: Do you understand that this Court is not obliged to search for an attorney that meets with your approval; do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand, under the law, before you could change standby counsel, or counsel of any kind, that you are obliged to give sufficient reasons for that?

THE DEFENDANT: Could you repeat the question?

THE COURT: Do you understand, under the law, you are obliged to give sufficient reasons for change of counsel of any kind whatsoever—

THE DEFENDANT: Yes.

**5.** Appellant's first five points of error are:

1) The trial court committed reversible error when it presented appellant with the "Hobson's Choice" of accepting Mr. Hunt and Mr. Guerrero as appointed counsel or representing himself against a charge of capital murder after appellant had apprised the court of an ethical and actual conflict of interest between appellant and these particular attorneys.

2) Appellant was denied his right to effective assistance of counsel as guaranteed by both the Texas and United States Constitutions when the trial court appointed Mr. Hunt and Mr. Guerrero as standby counsel over appellant's objection that an ethical and actual conflict of interest existed between appellant and these particular attorneys.

3) Appellant was denied his right to effective assistance of counsel as guaranteed by both the Texas and United States Constitutions when the trial Court appointed Mr. Hunt and Mr. Guerrero to represent appellant at trial over appellant's objection that an ethical and actual conflict of interest existed between appellant and these particular attorneys.

4) Appellant was denied his right to effective assistance of counsel as guaranteed by both the Texas and United States Constitutions when the trial court reappointed Mr. Hunt and Mr. Guerrero as standby counsel over appellant's objection that an ethical and actual conflict of interest existed between appellant and these particular attorneys.

5) The trial court committed reversible error by denying appellant's pre-trial request for the appointment of conflict-free assistance of counsel when to do so would not have caused any unnecessary delay in the proceedings.

THE COURT: —if you are appointed standby counsel.

THE DEFENDANT: Yes.

THE COURT: And you understand, of course, you can't wait until the day of trial and start demanding other counsel? Do you understand that?

THE DEFENDANT: Yes, sir, I understand that.

\* \* \* \* \* \*

THE COURT: And you are objecting to Mr. Hunt and Mr. Guerrero being—

THE DEFENDANT: Yes, I am objecting.

THE COURT: —appointed as standby lawyers?

THE DEFENDANT: Yes.

THE COURT: *Are your objections to them basically as to their trial tactics or such disagreements over how and whether to make arguments and present witnesses and so forth, just what are your objections?*

THE DEFENDANT: *My objections to their being appointed as standby counsel is based on lack of trust that I have in their acting in my best interests. The reason I feel that they are not acting in my best interests is to conversations that I had with them during the first trial. I explained the defense that I wished to present which they totally refused to consider. The defense I asked, that I explained to them, that I wanted to present was the same defense that I have given notice to this Court about, that is, notice of insanity defense and that the robbery portion of the defense was committed as a result of a mental illness that I was suffering in that the death occurred accidentally. Mr. Hunt and Mr. Guerrero refused to cooperate with me in presenting that defense and they still refuse to cooperate with me and I do not wish them to be appointed to assist me in any manner in this case.*

\* \* \* \* \* \*

THE DEFENDANT: ... *Because this is basically the reason why I do not wish them to be appointed in this case*

*as standby counsel. In addition, I'm objecting to be represented—to have counsel appointed other than the way that I requested in my motion for appointment of co-counsel, which was to assist me in filing in this case and conducting investigations that I wish to have conducted. That's the extent to which I wish to have this Court appoint an attorney in this case, no further.*

MR. HARDIN [Assistant District Attorney]: So I'm clear and I think he is making the record, perhaps, am I correct in understanding his objection to Mr. Hunt and Mr. Guerrero is simply them being appointed as standby counsel but he wants—*even if the Court did not appoint them, he wants no counsel to represent him in trial; is that correct?*

THE DEFENDANT: *Yes, both.*

MR. HARDIN: Is that correct in both instances?

THE DEFENDANT: Yes.

THE COURT: I take it you still want this Court to release the attorneys from their obligations to represent you in this case, either as standby or otherwise?

\* \* \* \* \* \*

THE COURT: And will you accept the court-appointed attorney to assist you and represent you in this case?

THE DEFENDANT: No, sir.

\* \* \* \* \* \*

THE COURT: And do you understand that once you undertake to represent yourself at trial that your own actions may damage your case to the extent that an attorney would have an extremely difficult time being of any assistance to you if you should later request one? [Emphasis added.]

The trial court, after completing the admonishments required under *Faretta,* supra, and *Scarbrough v. State,* 777 S.W.2d 83 (Tex.Cr.App.1989), granted appellant's motion for self-representation. Subsequent to this initial hearing on appellant's motion for self-representation, in the second hearing, the following transpired:

THE COURT: Mr. Dunn, I need you to remember that you are representing

yourself in this Court, and if you are not ready to proceed on this application for Writ of Habeas Corpus, you need to give me a reason for that.

THE DEFENDANT: I would advise the Court that I changed my mind about representing myself and I want Court [sic] to appoint counsel and I wanted to discuss the writ with counsel before the Court conducted an evidentiary hearing on it.

THE COURT: With that statement being made, for the record, Mr. Dunn, when you say you want to ask this Court to allow you to have a lawyer appointed to represent you and you want to withdraw as the attorney representing yourself in this case; is that correct?

THE DEFENDANT: Yes.

The Court then went on to admonish him that the lawyers, in the event they were re-appointed to represent him, would indeed be in charge of the case and that he would not allow the appellant to manipulate the court via delays that could be caused by continually changing his mind toward the appointment of counsel. With that in mind appellant was allowed to caucus with attorneys Hunt and Guerrero, who were by now only appointed in a standby capacity. After the attorney conference with appellant the following colloquy took place between the appellant and the trial court:

THE COURT: Mr. Hunt, Mr. Guerrero and Mr. Dunn, you have now in [sic] conference and I would inquire of you at this time what is your wish and desire about representing yourself in this case?

THE DEFENDANT: I talked with the attorneys, Mr. Hunt and Mr. Guerrero, and they have told me that they would assist me in presenting the evidence and obtaining the evidence I wish to present and obtain in this case. I also talked with them about their opinion as to any affect my sitting them [sic] as counsel would have on the second issue I have raised in the Writ of Habeas Corpus I filed in this case.

THE COURT: Mr. Dunn, I did not ask you for a dissertation. I merely asked you to tell me what your decision was as to whether or not you still wish to represent yourself or you want this Court to appoint lawyers to represent you.

THE DEFENDANT: I would like this Court to appoint attorneys to represent me.

THE COURT: Appoint what?

THE DEFENDANT: Attorneys to represent me.

The court, acting upon the request of appellant, re-appointed Hunt and Guerrero to continue as appellant's counsel and instructed him that during the course of the trial appellant would not be allowed to stand up and make objections or make any statements either before or outside the presence of the jury during the proceedings. Appellant then made the ensuing objection to appointment of counsel:

THE DEFENDANT: The defendant objects to the attorneys this Court has appointed to represent him for the following reasons. Said attorneys have refused in the past to cooperate with the defendant in presenting the defense he wishes to present. And every conversation defendant has had with said attorneys in which he brought up the defense he wishes and said defense attorneys have objected to the defense. In fact, said conversation—in fact, from said conversation that it was clear to the defendant that said attorneys not only do not wish to present the defense he wish [sic] to present, that they do not present [sic] to present any defense at all. Rather if they were to say how the case was handled, they would simply leave it to the jurors to decide whether it was possible for anyone to be such a monster, as the State would have them believe, and if they did, then it would just be bad luck for the defendant that they had done so. For the above reasons and because of such statements made to the Defendant by attorney Robert Hunt such as "to hell with you" and because of such gestures being made by such attorney toward defendant, as picking up objects such as an umbrella and ashtray and appearing as if he wish to hit the defendant, the defen-

**518**

dant does not trust said attorney has his best interests.

The third reason I have that is objectable to the Court-appointed attorneys is that *I filed a malpractice [sic] against said attorney that representation of them [sic] in the first trial that was conducted in this case [was ineffective]. Attorney Robert Hunt even mentioned said suit to the defendant on July 17, 1987, and stated that he had to hire an attorney to represent him because of the suit.*

The fourth reason is that defendant essentially should not be forced to accept counsel that he shows a serious unwillingness to cooperate with in the first trial conducted in this case and who is unwilling to cooperate in this case and who is unwilling to cooperate with in this trial. For the above reasons, the defendant objects to the appointment of said attorneys and moves for their dismissal and appointment of other attorneys such as Jackie Zimmerman and Percy Foreman to represent him in this case. [Emphasis added.]

The trial court denied appellant's motion at that time, however, appellant continued in his insistence and filed a second written motion for self-representation which was heard and ultimately granted by the court with Hunt and Guerrero again being appointed as standby counsel.[6]

The essence of the appellant's assertions focus on his claim that the trial court committed reversible error in presenting him with the proverbial "Hobson's Choice" by compelling him to accept Hunt and Guerrero as his attorneys or standby attorneys or forego such representation and act as his own attorney. This alternative was unacceptable according to appellant because of the conflict of interest between himself and the particular attorneys. Appellant further asserts that because he was compelled to represent himself under these circumstances he was denied effective assistance of counsel as guaranteed by both the State and Federal Constitutions. We cannot agree.

At least from the inception of appellant's second trial appellant made it painstakingly clear that he desired to represent himself, rather than be represented by Mr. Hunt and Mr. Guerrero. In his first motion for self-representation, appellant upon being admonished by the trial court was given ample opportunity to express on the record the reasons as to why he sought to discharge his court-appointed attorneys. Rather than assert any genre of conflict, he expressed in unequivocal terms that his dissatisfaction with his attorneys stemmed from their trial tactics, specifically their refusal to present to the jury the defense which he insisted be raised. After the appropriate admonishments the motion was granted. At appellant's next appearance before the trial court, appellant demonstrated his preference to be represented by counsel at which time the court permitted appellant, Hunt and Guerrero time to confer. Subsequent to this consultation, appellant manifested approval of counsel and that the differences between attorneys Hunt and Guerrero had indeed been ironed out emphatically expressing that the two attorneys had agreed to present the evidence and obtain the witnesses appellant had desired.

It is obvious from this record that the trial court admonished appellant that the attorneys were to be in charge of the case, make the objections, and present the defense, if any. It was at this point appellant bowed his neck and went into his diatribe over the reappointment of Hunt and Guerrero. Appellant then reiterated his initial objection to the attorneys, that they failed to cooperate with him and do his bidding. It was at this juncture appellant interposed the contention that there existed a conflict of interest due to appellant having in the past filed a malpractice suit against the attorneys. Appellant's request for alternative appointed counsel was denied.

6. The admonishments given by the trial court at both hearings will be discussed at length as they become relevant to the points of error raised by the appellant.

In appellant's brief, he presents two predicate problems which are naturally interwoven into his five points of error. In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court resolved that once a possible conflict of interest is brought to the trial court's attention by either a pretrial motion or trial objection it has the constitutional obligation to at least take adequate steps to ascertain whether the risk of the conflict of interest is too remote to warrant remedial action. Although *Holloway* presented a conflict dilemma within the context of multiple representations, the trial court is nonetheless under the obligation to make the necessary inquiries into a conflict problem once it is brought to its attention, notwithstanding there are no multiple co-defendants with conflicting interests. The initial question here is whether the trial court shirked its responsibility in the case *sub judice*. Under the circumstances we conclude that the trial court was not obligated to conduct any further inquiries to ascertain whether Hunt and Guerrero should have been removed as standby counsel. In appellant's initial hearing for self-representation and for removal of appointed counsel, appellant was adamant that he wanted to represent himself and that he desired the removal of trial counsel because they refused to raise the defense of insanity.

Subsequent to the trial court's granting appellant's motion for self-representation, appellant made a request for appointment of counsel and after a conference with Hunt and Guerrero appellant, as we have previously observed, emphatically stated:

THE DEFENDANT: *I talked with the attorneys, Mr. Hunt and Mr. Guerrero, and they have told me that they would assist me in presenting the evidence and obtaining the evidence I wish to present and obtain in this case. I also talked with them about their opinion as to any affect my sitting them as [sic] counsel would have on the second issue I have raised in the Writ of Habeas Corpus I filed in this case.* [Emphasis added.]

Appellant then stated to the court that he wanted attorneys appointed to represent him at which time Hunt and Guerrero were appointed. The trial court then admonished appellant that he could no longer participate as an attorney and that appointed counsel was to make all objections. It was at this juncture that he objected to the reappointment of Hunt and Guerrero reiterating his initial objection and raising the issue of the malpractice suit which is the basis of the conflict claim. We observe from the state of the record that appellant seemed satisfied with the reappointment of counsel in light of his conference with the attorneys, until he was informed by the trial court that he would not be permitted to participate as an attorney. Appellant asserted his objections only after the trial court's admonishments. The conflict which he contended existed was only one of a plethora of objections that he lodged against the reappointment of Hunt and Guerrero. Therefore, under the narrow circumstances presented in this case we conclude that it was not incumbent upon the trial court to take any further steps in ascertaining whether a debilitating conflict of interest existed requiring that these attorneys be disqualified. There is ample circumstantial evidence derived from the sequence of events to support the trial court's action. It could have readily been concluded by the trial court that appellant was indeed attempting to manipulate the judicial process through a scheme to delay and obstruct the trial process.

Furthermore this Court has in the past held that the filing of a civil action against a court appointed attorney is not a per se conflict of interest which would warrant the disqualification of such attorney at the whim of the criminal defendant. *Perry v. State*, 464 S.W.2d 660 (Tex.Cr.App.1971). The scenario presented in this case presents no "Hobson's choice" of putting appellant in the position of accepting the assistance of the two attorneys appointed with the alleged ethical and actual conflict of interest, or representing himself. To the contrary, at various times appellant insisted that he be allowed to represent himself and on at least one occasion informed the trial court that he desired no

attorney be appointed. A criminal defendant is not entitled to appointed counsel of choice. Under the State and Federal Constitutions he is entitled to effective assistance of counsel, however this constitutional protection cannot be manipulated in such a manner so as to throw the trial process into disarray. Appellant never made any claim that there existed a conflict of interest which actually affected the adequacy of his representation provided by Hunt and Guerrero. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Points of error one through five are therefore overruled.

In twelve intertwined points of error, appellant contends that he lacked the capacity to knowingly and intelligently waive his right to assistance of counsel and therefore the trial court committed reversible error in permitting him to represent himself.[7] As the State amply points out, and we agree, the appellant's assertion that he did not possess the capacity to knowingly and intelligently waive his right to assistance of counsel rest upon a four-prong attack. First, it is claimed that at the time appellant made this waiver and exercised his right to self-representation, he was incompetent to make such a choice due to a pre-existing psychiatric infirmity; second, his exercise of his right of self-representation was rendered equivocal by appellant's occasional request for or acceptance of as-

---

7. Points of error six through seventeen read:

6) The trial court committed reversible error in finding that appellant had the capacity to knowingly and intelligently waive his right to assistance of counsel when the trial court knew appellant suffers from a severe personality disorder which adversely affects his ability to make a rational waiver despite his level of intelligence.

7) The trial court committed reversible error in finding that appellant had the capacity to knowingly and intelligently appreciate the dangers and disadvantages of self-representation when the trial court knew appellant suffers from a severe personality disorder which adversely affects his ability to make a rational choice in regard to self-representation despite his level of intelligence.

8) The trial court abused its discretion [sic] when it allowed appellant to present evidence and argue in support of pro-se motions filed after the appointment of counsel when the trial court knew that appellant suffers from a severe personality disorder and should have known that it would trigger a renewed desire in appellant to act out his unreasonable fantasy of being a brilliant and successful lawyer.

9) The trial court committed reversible error in allowing appellant [sic] to waive the assistance of counsel after he had relinquished his right to self-representation and requested the appointment of counsel when the trial court knew appellant suffers from a severe personality disorder which adversely affects his ability to make a rational decision to waive the assistance of counsel.

10) The trial court committed reversible error in allowing appellant to reassert his right to self-representation having once relinquished it when the trial court knew that appellant suffers from a severe personality disorder which adversely affects his ability to make a rational decision in regard to self-representation.

11) The trial court committed reversible error in finding that appellant had sufficient capacity to represent himself in light of the fact that both the trial judge and the prosecutor voiced their doubts that appellant really understood that he would not be entitled to special privileges if he chose to represent himself.

12) The trial court erred in allowing appellant to exercise his right to self-representation when the invocation of that right was conditioned upon his having access to the writ room, which rendered the request equivocal.

13) The conviction must be reversed and the cause remanded for new trial because the record, as a whole, fails to show a valid and unequivocal waiver of appellant's constitutional right to assistance of counsel.

14) The conviction must be reversed and the cause remanded for new trial because the record, as a whole, fails to show a valid and unequivocal assertion of appellant's constitutional right to represent himself at trial.

15) The trial court committed reversible error in failing to make an inquiry into appellant's competency to choose to represent himself when standby counsel informed the court that appellant informed him that appellant did not feel adequate to conduct the voir dire of the prospective jurors.

16) The trial court committed reversible error in failing to make an inquiry into appellant's competency to choose to represent himself in light of standby counsel's request for a hearing based upon appellant's inability to conduct a meaningful voir dire of the prospective jurors.

17) The trial court committed reversible error in failing to make an inquiry into appellant's competency to choose to represent himself in light of the prosecutor's request that the trial court hold a hearing to determine that particular issue.

sistance of appointed counsel; third, appellant's invocation of his right to self-representation was rendered equivocal by his insistence on access to the writ room in the Harris County Jail to do legal research; and finally, appellant was simply incompetent to exercise such a choice due to his lack of legal expertise and ability. We will address each of appellant's contentions under these four categories.

◼ Prior to appellant's original trial in 1980, the trial court had appointed Dr. Charles B. Covert, pursuant to Article 46.-02(3), V.A.C.C.P., to conduct a psychiatric evaluation to determine the appellant's competency to stand trial in regards to that original proceeding.[8] Appellate counsel procured a supplementation of the record and has now included Dr. Covert's September 21, 1980 report as part of this appellate record. It is excerpts from this psychiatric evaluation upon which appellant makes his initial claim that his waiver of counsel and invocation of his right to self-representation were invalid, in particularly appellant directs us to the following opinion of Dr. Covert:

> Mr. Dunn's narcissistic personality traits involve a grandiose sense of self-importance or uniqueness (he sees himself as a romantic and heroic figure—"like a black gunfighter"), a preoccupation with unrealistic fantasies of future success and power such as his desire to be "either a psychiatrist, lawyer, scientist or a king," and a generally exhibitionistic life involving unlawful acts which he feels will gain him attention or recognition. He is indifferent to others. He feels he is entitled to special favors in the legal system. He has exploited his mother financially and otherwise, and has had a persistent lack of empathy for others.
>
> Mr. Dunn's personality is also characterized [sic] of schizotypal traits that include unrealistic thinking, illusions, speech that is characterized by circum-

stantiality (the inclusion of much non-essential information), inadequate rapport in face-to-face discussion, as well as suspiciousness, and undue anxiety and hypersensitivity about public criticism concerning the felony with which he is charged.

Appellant then proceeds that had the trial court taken this passage into consideration he would have been compelled to have empaneled a jury to determine appellant's competency, and at least this would have put the court on notice that appellant was indeed not competent to waive his right to counsel and subsequently assert his constitutional right to self-representation.

Although the Doctor's report set out appellant's antisocial personality disorder it also made clear that appellant was at least at the time of his examination in 1980 competent to stand trial:

> With regard to competency to stand trial, Mr. Dunn has been interested in law for several years and admits to having done considerable reading about legal matters. He is familiar with legal terminology and knows the workings of the court system far better than the average individual. He is able to confer with and cooperate with his defense attorneys and can be expected to do so unless he determines that by refusing to, or by being generally disruptive in the courtroom, he will inject uncertainties and confusion to the point he might not be ultimately held accountable for his illegal acts. He is a calculating person who can be expected to attempt to manipulate the legal system in both subtle and non-so-subtle ways.

Thus, in actuality the report did not or would not have provided the trial court with any evidence of incompetency. At the time of appellant's waiver of counsel and assertion of his right to self-representation, appellant did not present nor was there any evidence in the record from any source that

---

**8.** Section 1(a) of Article 46.02, supra, reads:
 (a) A person is incompetent to stand trial if he does not have:
 (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or

 (2) a rational as well as factual understanding of the proceedings against him.
 (b) A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of evidence.

appellant was incompetent to exercise his right to self-representation. To the contrary, even if we were to assume that the trial court considered the report, then in that event, the trial court would have had evidence before it which was unequivocally stated that the appellant was competent, inapposite to appellant's position. Cf. *Boling v. State*, 617 S.W.2d 241, 242 (Tex.Cr. App.1981). We reject these contentions.

Appellant's second proposition is equally without merit. In *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex.Cr.App.1989), this Court recognized the appropriate standard to be utilized in gauging a criminally accused's desire to enter the quagmire and pitfalls of self-representation:

> In order competently and intelligently to invoke his Sixth Amendment right to represent himself, an accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. As we have shown *ante*, appellant in this cause was provided an extensive awareness of problems in the undertaking so that his decision would not be lightly made. See *Martin v. State*, 630 S.W.2d 952, 954 n. 5 (Tex.Cr. App.1982). However, "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation[.]" 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82. "[N]either the defendant's technical legal training nor his ability to conduct an adequate defense are requisites for self-representation." *Burton v. State*, 634 S.W.2d 692, 694 (Tex.Cr.App.1982). While the choice must be knowingly and intelligently made, it need not be wise. Indeed, the accused must be permitted to "conduct his own defense ultimately to his own detriment," if that is his informed decision. 422 U.S. at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 581. Whether he is compe-

tent to represent himself is immaterial; the appropriate question is whether he is competent to choose the endeavor. Moreover, that its exercise may cause some inconvenience or even disruption in the trial proceedings, so long as it is not a calculated obstruction, cannot deprive the accused of the right, once asserted. *Id.*, n. 46.

The record in this case is abundantly clear that appellant at least on one occasion vacillated on whether he desired to exercise his right to self-representation or accept representation by appointed counsel. Momentary vacillation should not be equated with a conscious equivocation. *Id.*, at 92. Over the course of appellant's two hearings for self-representation, the trial court thoroughly focused on the mandated questions as to whether the appellant was competent to choose to represent himself and was he aware of extensive problems in undertaking the endeavor. The trial court at both hearings propounded to appellant a comprehensive collocation which made appellant amply aware of the dangers and disadvantages of self-representation. With the exception of a brief period of time where appellant was apparently under the impression that appointed counsel was willing to try the case in a manner acceptable to appellant, he was persistent in his assertion of his right to self-representation. In fact there is not an iota of evidence which would demonstrate that over the course of the several pretrial hearings or the trial proceedings themselves to suggest that appellant had contemplated relinquishment of ultimate control of the course of his defense. To the contrary, the record illustrates that although appellant entertained the idea that he would accept representation by Messrs Hunt and Guerrero after the trial court admonished appellant in a manner consistent with constitutional authority there is sufficient evidence to support the trial court's conclusion that appellant competently and intelligently invoked his Sixth Amendment right to represent himself. See *Scarbrough v. State, id.*, at 93.[9]

---

9. In addition to the queries made by the trial court which have already been set out in this

■ Subsequent to the trial court initially granting appellant's pro se motion for self-representation appellant made complaint that the jailers in the Harris County Jail were depriving him access to the writ room (jail law library). At this time the appellant informed the trial court that he needed access to the law library to prepare his pretrial motions and his defense and that such access was being withheld. This issue will be discussed more thoroughly under point of error nineteen, but what needs to be mentioned is that access to legal research facilities was not a condition of appellant's assertion to self-representation. It cannot be denied that appellant requested the trial court to insure that he had sufficient access to use of law books and the law library, but the record also reveals that the request or objection by appellant in no way made appellant's invocation of the right to self-representation "conditional" or "equivocal." Notwithstanding the appellant's protestations it is apparent, at least from the state of this record, that appellant was willing, if not, insistent to proceed pro se whether afforded access to the law library or not.

■ Finally, appellant contends that he was incompetent to invoke his Sixth Amendment right to self-representation because of his lack of legal expertise. *Faretta*, and its progeny including this Court's *Scarbrough v. State*, supra, at 92, emphasize that the pertinent query in determining whether an accused's invocation of the right to self-representation was competently and intelligently made is to be focused on whether he was made aware of the dangers and disadvantages of self-representation and does the record establish that the individual made a choice with his eyes open. It is not a requirement that the appellant have the skill and experience of an attorney before he is able to embark on this venture. To reiterate, "While the choice must be knowingly and intelligently made it need not be wise. Indeed, the

accused must be permitted to 'conduct his own defense ultimately to his own detriment' if that is his informed decision. Whether he is competent to represent himself is immaterial; the appropriate question is whether he is competent to choose the endeavor." *Scarbrough, id.*, at 92 (citations omitted). Consequently, points of error six through seventeen are overruled.

■ In point of error eighteen appellant complains that the trial court committed reversible error in denying his timely request to present an opening statement immediately following the opening statement made to the jury by the prosecution in violation of Article 36.01(a)(5), V.A.C.C.P. After the State made its opening statement and prior to the first state's witness being placed upon the stand, the following occurred:

THE DEFENDANT: Before the State's witness takes the stand, may I make a brief statement to the jury?

THE COURT: You will be able to do that when it comes your time to put on your evidence.

THE DEFENDANT: Thank you.

Article 36.01, supra, reads as follows:

(a) A jury being impaneled in any criminal action, except as provided by Subsection (b) of this article, the cause shall proceed in the following order:

1. The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

2. The special pleas, if any, shall be read by the defendant's counsel, and if the plea of not guilty is also relied upon, it shall also be stated.

opinion, the court made it clear that it would neither permit "hybrid representation" nor allow the appellant, as a condition of self-representation, have an inordinate amount of jail law library time for the purpose of preparing his motion and defense. In light of these admonishments the record reveals that appellant persisted in his request for self-representation. See *Scarbrough v. State, id.*

3. The State's attorney shall state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof.

4. The testimony on the part of the State shall be offered.

5. The nature of the defenses relied upon and the facts expected to be proved in their support shall be stated by defendant's counsel.

6. The testimony on the part of the defendant shall be offered.

7. Rebutting testimony may be offered on the part of each party.

8. In the event of a finding of guilty, the trial shall then proceed as set forth in Article 37.07.

(b) The defendant's counsel may make the opening statement for the defendant immediately after the attorney representing the State makes the opening statement for the State. After the defendant's attorney concludes the defendant's opening statement, the State's testimony shall be offered. At the conclusion of the presentation of the State's testimony, the defendant's testimony shall be offered, and the order of proceedings shall continue in the manner described by Subsection (a) of this article.

Although appellant requested to make an opening statement it is obvious that he capitulated the trial court's ruling. We are aware of *Farrar v. State*, 784 S.W.2d 54 (Tex.App.—Dallas 1989), where the Fifth Court of Appeals opined:

The right to make an opening statement is a valuable statutory right. The denial of that right constitutes reversible error. *Caraway v. State*, 417 S.W.2d 159, 161 (Tex.Crim.App.1967); *Kennedy v. State* [150 Tex.Crim. 215] 200 S.W.2d 400, 407 (Tex.Crim.App.1947). The defense attorney need not object to preserve error when the court denies him the right to make an opening statement. See *Crew v. State*, 387 S.W.2d 898 (Tex. Cr.App.1965) (no formal bill of exception needed to preserve error when court denied defense right to opening statement). In this case, the trial court refused the

defense attorney's request to present an opening statement to the jury. This constituted reversible error. We therefore reverse the trial court's judgment and remand the case for a new trial.

First, we observe that any reliance upon *Crew*, supra, was misplaced as close scrutiny to that case reveals that trial counsel there specifically objected to the trial court's refusal to allow a defense opening statement. Second, to forego the requirement of a specific objection to preserve error under these circumstances would be contravention of Tex.R.App.P. 52(a) which provides:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

This Court has always stressed the importance of the specific objection. In *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Cr.App.1977), we stated:

The generally acknowledged policies of requiring specific objections are two-fold. First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. [1] Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony. McCormick, Handbook of the Law of Evidence, Sec. 52, p. 113, 115 (2d ed. 1972); 4 Jones, The Law of Evidence, Sec. 28:2, P. 276 (6th ed. 1972). In accordance with these policies, a number of exceptions to the general rule that a party cannot complain on appeal to the overruling of a general objection or an imprecise specific objection have been created. 1 McCormick &

Ray, Evidence, Sec. 25, p. 25 (2d ed. 1956). Thus, where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection. McCormick & Ray, supra.

1. A collateral but important ramification of this function is to provide the trial court with an opportunity to attempt to cure any harm resulting from the action giving rise to the objection. *Coleman v. State*, 481 S.W.2d 872 (Tex.Cr.App.1972) and cases cited therein.

We observe that the scenario presented under this point of error represents a classic situation where a specific objection would have at least given the trial court an opportunity to correct its error in not permitting appellant to make his opening statement after the prosecution had made theirs but prior to the State presenting its case in chief.

Prior to September 1, 1987, a defendant was only allowed to present an opening statement in accordance with Article 36.-01(a)(5), supra. However, after that date the section (b) (the new amendment), was effective, which permitted the defendant's counsel to make his opening statement immediately after the State's. Had appellant called this to the court's attention or gave a basis for allowing opening argument at the requested time, the trial court, at the very minimum, would have been afforded the opportunity to cure his original error in denying appellant's request. In the case *sub judice*, appellant simply acquiesced in the trial court's action. No error was preserved for appellate review. Point of error eighteen is overruled.

 In point of error twenty, the appellant asserts that the trial court deprived him effective access to the courts by denying his request for paralegal assistance to help prepare for trial and do appropriate legal research. As we have already stated the record indicates that appellant competently and intelligently invoked his Sixth Amendment right to self-representation. That the accused has no right to standby counsel was made plain by this Court in

*Scarbrough*, supra, at 93, nor is he constitutionally entitled to any form of "hybrid representation." If a trial court that has concerns about potential delays caused by an exaggerated use of library facility can simply deny the accused access to legal resources, we can find no constitutional provision, either State or Federal, which would compel appellant to have some type of legal support staff. See *Scarbrough, id.*, at 93. Consequently, point of error twenty is overruled.

 The gravamen of appellant's point of error nineteen is that by the regulations and procedures enacted by the Harris County Jail he was unconstitutionally denied availability to the writ room to conduct legal research and trial preparation in contravention of the dictates announced in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In *Bounds*, the Supreme Court held that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. [Footnote omitted]." Appellant's claim is apparently founded upon an administrative regulation which limited jail inmates access to the writ room to one hour per week, which appellant asserts was woefully inadequate for trial preparation. We need not reach the merits of the constitutional claim under *Bounds*, as evidence presented at a pretrial hearing dispenses with that necessity.

The trial court afforded the appellant a pretrial hearing on this matter and appellant presented Sharon Seate, a law clerk for the Harris County Central Jail Law Library, who testified that according to jail records in her possession, that during appellant's stay in the county jail he had the opportunity to attend the law library some seventy-one times. Of those seventy-one times, he refused to attend forty-seven times, exercising his option to attend only twenty-four times. Thus, for whatever reason, appellant made the choice not to utilize the library facilities when they were

made available to him. Appellant cannot now be heard to complain that he was denied access to the writ room. The trial judge was the trier of fact concerning appellant's pretrial complaint, and under these circumstances we cannot conclude he abused his discretion in denying appellant relief. Point of error nineteen is overruled.

■ In point of error twenty-three, the appellant now on appeal for the first time expressly invokes his right to a speedy trial under both the State and Federal Constitutions. First, appellant implores us to apply the right to a speedy trial guaranteed by the Sixth Amendment as applied to the states by the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed 2d 101 (1972). Second, he asserts Article I, § 10 of the Texas Constitution which guarantees the accused in all criminal prosecutions the right to a speedy public trial. See *Chapman v. Evans*, 744 S.W.2d 133 (Tex.Cr.App.1988). As the State correctly points out and the record clearly indicates that appellant pursued his speedy trial motion under Article 32A.02, § 1(1), V.A.C.C.P., thus appellant did not raise the constitutional issues before the trial court. Unfortunately for the appellant, in *Meshell v. State*, 739 S.W.2d 246 (Tex.Cr.App.1987), this Court declared the "Texas Speedy Trial Act" unconstitutional and void *ab initio*. Consequently, since appellant's point of error does not comport with his trial objection nothing was pre-

served for appellate review. Point of error twenty-three is overruled.

■ Appellant's pro se briefs, in essence, repeat the points of errors raised by appellate counsel, with the exception that appellant asserts ineffective assistance of counsel and that the trial court lacked subject matter jurisdiction. We find that both points of errors asserted are totally devoid of merit. Appellant competently and intelligently invoked his Sixth Amendment right to self-representation, and thus waived his right to appointed counsel within constitutional parameters. He may not now be heard to attack standby counsel under the circumstances of this case. There is nothing developed in this record which, by any stretch of the imagination, would indicate such a deficient performance. Likewise, appellant was indicted for capital murder and thus the district courts of this State have subject matter jurisdiction. Both of these points of error are overruled.

Accordingly the judgment of the trial court is affirmed.

CLINTON, J., concurs in result.

BAIRD, Judge, concurring in part and dissenting in part.

While I concur with the result reached by the majority in the remaining points of error, I respectfully dissent to the disposition reached in interrelated points of error one, two, three, four and five [1]. For the

---

1. Appellant's Points of Error One through Five:

 1) The trial court committed reversible error when it presented appellant with the "Hobson's Choice" of accepting Mr. Hunt and Mr. Guerrero as appointed counsel or representing himself against a charge of capital murder after appellant had apprised the court of an ethical and actual conflict of interest between appellant and these particular attorneys.

 2) Appellant was denied his right to effective assistance of counsel as guaranteed by both the Texas and United States Constitutions when the trial court appointed Mr. Hunt and Mr. Guerrero as standby counsel over appellant's objection that an ethical and actual conflict of interest existed between appellant and these particular attorneys.

 3) Appellant was denied his right to effective assistance of counsel as guaranteed by

both the Texas and United States Constitutions when the trial court appointed Mr. Hunt and Mr. Guerrero to represent appellant at trial over appellant's objection that an ethical and actual conflict of interest existed between appellant and these particular attorneys.

 4) Appellant was denied his right to effective assistance of counsel as guaranteed by both the Texas and United States Constitutions when the trial court reappointed Mr. Hunt and Mr. Guerrero as standby counsel over appellant's objection that an ethical and actual conflict of interest existed between appellant and these particular attorneys.

 5) The trial court committed reversible error by denying appellant's pre-trial request for the appointment of conflict-free assistance of counsel when to do so would not have caused any unnecessary delay in the proceedings.

following reasons, I would abate this appeal.

As I understand the majority opinion, *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), stands for the following proposition: when the possibility of a conflict of interest is brought to the attention of the trial court by either a pretrial motion or a trial objection, the trial court has the constitutional duty to determine whether a conflict exists, and, if such a conflict exists, to take appropriate remedial action. Pg. 519. In short, upon receiving notice of a possible conflict of interest, the trial court has a constitutional duty to make an inquiry into the possibility of that conflict.

Appellant's reluctance to accept legal counsel stemmed from disagreements between appellant and Hunt and Guerrero, the attorneys who represented appellant at his original trial for the same offense. Appellant's initial conviction and death sentence were reversed because of the inability of the court reporter to provide this Court with a complete statement of facts for appellate review. *Dunn v. State*, 733 S.W.2d 212 (Tex.Cr.App.1987). When the trial court attempted to provide appellant with Hunt and Guerrero for the second trial, appellant lodged the following objection:

> The third reason I [appellant] have that is objectionable to the Court-appointed attorneys is that I filed a malpractice [sic] against said attorney that representation of them [sic] in the first trial that was conducted in this case [was ineffective]. Attorney Robert Hunt even mentioned said suit to the defendant on July 17, 1987, and stated that he had to hire an attorney to represent him because of the suit.

At p. 518.

The majority acknowledges that the foregoing objection regarding the pending malpractice suit against Hunt and Guerrero, in connection with their original representation of appellant, was sufficient under *Holloway* to alert the trial court that a possible conflict of interest existed. Once alerted, the trial court had a constitutional duty under *Holloway* to inquire into the possible conflict. An inquiry by the trial court would have accomplished three objectives. First, such an inquiry was of the utmost importance because appellant was charged with the offense of capital murder and had previously been sentenced to death for this alleged offense. Therefore, appellant clearly needed conflict free counsel to prepare for his trial rather than being left to fend for himself. Secondly, such an inquiry would have allowed Hunt and Guerrero to respond to appellant's allegations. Possibly, the two attorneys considered the malpractice suit nothing more than a nuisance and a dilatory tactic by appellant. Perhaps Hunt and Guerrero harbored no ill will toward appellant, and, therefore, no conflict of interest existed. Finally, such an inquiry would have provided this Court with an appellate record sufficient to determine if a conflict of interest existed as alleged in appellant's points of error one, two, three, four and five. Without such an inquiry, the trial court did not discharge its constitutional duty under *Holloway*.

Because we cannot determine from the record before us whether a conflict existed, I believe this appeal should be abated and the cause remanded to the trial court for a hearing to determine if such a conflict existed.[2] I do not believe that we should address the merits of appellant's points of error one, two, three, four and five until we have a complete record on the conflict of interest issue before us. For these reasons I respectfully dissent to the affirmance of this cause, at this time.

MALONEY, J., joins this opinion.

---

2. This Court has abated appeals in the past. *See, Reynolds v. State,* 760 S.W.2d 351, 352 (Tex. App.—Houston [1st] 1988) where we remanded the cause to the trial court for an evidentiary hearing. Afterwards, the trial court forwarded the statement of facts from that hearing to the Court of Appeals for review.