**Affirmed and Memorandum Opinion filed October 23, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00847-CR

**TONY KAREEM WHITFIELD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1277164**

## M E M O R A N D U M   O P I N I O N

Appellant Tony Kareem Whitfield challenges his conviction for aggravated robbery on the grounds that the evidence is legally insufficient to support a finding of theft or attempted theft as an element of aggravated robbery and that he received ineffective assistance of counsel. We affirm.

### BACKGROUND

In early September 2010, an employee of a gas station/convenience store (the "store") located in northern Harris County stepped outside the store to lock a metal gate

at closing time, while his co-worker remained inside the store. As the employee was locking an outside gate, using a set of keys that included keys to the store cash registers, back offices, and safes, he heard footsteps approaching quickly from behind him. He glimpsed two African American males, including appellant. He recognized appellant, the larger of the two, because he had seen appellant in the store before.[1] Appellant and the other individual were wearing dark clothes.

The employee dropped his keys and lay on the ground when the two approached him. The two men began to choke the employee from behind, causing him to fear for his life. While he was being choked, the employee overheard his two assailants speaking. They ordered him to get up, but the employee stayed on the ground. The two assailants began to lift the employee, but the employee then heard them speaking to each other regarding a gun inside the store. The assailants then left the area; the employee got to his feet. The co-worker, who had remained inside the store during the incident, unlocked the front door and let him back inside. The two employees contacted the police.

Meanwhile, Harris County Sheriff's Department Deputies Mark Gustafson and Leobardo Aguillon happened to drive by the scene. They observed appellant running from the store with a black rag covering the lower part of his face. When appellant observed the deputies' marked patrol car, he slowed to a walk and discarded "a bundle" on the ground. Gustafson exited the patrol vehicle and apprehended appellant after a very short chase. Gustafson discovered that the discarded bundle was comprised of a hat, gloves, and empty bag, a black cloth, and a handgun. He returned appellant to the store, where he discovered the employees. The employees reported that they had been "robbed" by two individuals. Surveillance cameras at the store captured much of the incident. Gustafson reviewed the surveillance video and observed appellant pulling on the door of the store and pointing a gun at the employee inside the store.

---

[1] The employee's testimony regarding whether appellant was wearing a mask was inconsistent. First, he described appellant as wearing a mask, but later, he testified that appellant was not wearing a mask.

2

Additional officers arrived, set up a containment perimeter, and deployed a canine unit. The other suspect was apprehended, and officers discovered nearby an abandoned handgun, dark sweat pants and a jacket, a sleeve, and a pair of gloves.

Appellant was indicted for aggravated robbery. The above-described evidence was presented to the jury, including the surveillance video from the store. A jury convicted him as charged in the indictment. After finding an enhancement paragraph "true," the jury sentenced him to thirty-five years in the Institutional Division of the Texas Department of Criminal Justice. The trial court entered judgment accordingly, and this appeal timely ensued.

## ANALYSIS

### A. Legal Sufficiency

In his first issue, appellant asserts that the evidence is legally insufficient to support the jury's guilty verdict because there is no evidence that he had committed or was attempting to commit a theft, a requisite finding for an aggravated robbery conviction.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Although we consider all evidence presented at trial, we do not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *Clayton v.*

3

*State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence.  *Id.*

Here, appellant was convicted of aggravated robbery.[2]  Thus, the State had the burden to prove that appellant committed robbery as defined by section 29.02 of the Texas Penal Code and that he used or exhibited a deadly weapon.  *See* Tex. Penal Code §§ 29.02(a), 29.03(a)(2).  As is relevant to appellant's legal sufficiency challenge, the State had to establish that appellant committed this offense "in the course of committing theft."  Theft is defined as unlawfully appropriating property with the intent to deprive the owner of the property.  *Id.* § 31.03(a).  "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."  *Id.* § 29.01(1); *see Sorrells v. State*, 343 S.W.3d 152, 155–56 (Tex. Crim. App. 2011).

In this case, there is admittedly no evidence that appellant actually committed theft.  Rather, we must consider whether the jury, based on the evidence presented, could have reasonably inferred that appellant or the other assailant attempted to commit theft.  *See Clayton*, 235 S.W.3d at 778.  Appellant asserts that "the evidence simply was two males with guns ran up to a store, and after seeing someone inside the store with a gun, they ran away."

But this was not the only evidence before the jury.  In addition to this evidence, the following evidence supports the jury's verdict:  (1) appellant and his cohort approached the store when it was closed and there were no other nearby open businesses, both wearing dark-colored clothing, hats, masks, and gloves; (2) appellant had an empty bag and a handgun with him; (3) appellant purposefully brandished his loaded handgun at the store employees; (4) he and his cohort ordered the employee outside the store to stay on the ground and then ordered him to get up; (5) appellant attempted to open the front door of the store and pointed his loaded handgun at the employee inside the store;

---

[2] An instruction on the law of parties was provided to the jury in this case.

4

(6) appellant and his cohort fled the scene when they realized that the employee inside the store had a gun; (7) appellant acted suspiciously when he saw a patrol car by slowing from a run to a walk, discarding his hat, gloves, mask, empty bag, and gun; and (8) he initially refused to stop when ordered to do so by Gustafson. From this evidence, the jury could reasonably have inferred that appellant's conduct occurred "in the course of committing theft." *See, e.g.*, *Autry v. State*, 626 S.W.2d 758, 763 (Tex. Crim. App. 1982) (en banc) ("The actual commission of the offense of theft is not a prerequisite to the commission of the offense of robbery. The State's failure to prove that any property was taken . . . did not render the evidence insufficient to prove that [the victim] was murdered while appellant was in the course of committing and attempting to commit the offense of robbery."); *Johnson v. State*, 541 S.W.2d 185, 187 (Tex. Crim. App. 1976) (concluding that even though officer arrested appellant before theft occurred, sufficient evidence from attendant circumstances established aggravated robbery); *King v. State*, 157 S.W.3d 873, 875 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Chastain v. State*, 667 S.W.2d 791, 795 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd).

Accordingly, we conclude that the evidence is legally sufficient to support the jury's verdict. We overrule appellant's first issue.

**B.     Ineffective Assistance of Counsel**

In issue two, appellant asserts that he received ineffective assistance of counsel because an actual conflict existed between him and his trial counsel. He further contends that this conflict had an adverse effect on his counsel's performance at trial.

When considering an ineffective assistance of counsel claim based on an alleged conflict of interest, the Court of Criminal Appeals has directed us that an appellant must show (1) an actual conflict of interest existed and (2) trial counsel actually acted on behalf of those other interests during trial. *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980)). An actual conflict of interest exists if counsel "'is required to make a choice between advancing his client's interests in a fair trial or advancing other interests (perhaps counsel's own) to the

5

detriment of his client's interests.'" *Id.* at 355 (quoting *Montreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997).

Here, appellant relies on two factors to establish that his trial counsel had an actual conflict of interest with him: (1) appellant filed a grievance against his counsel with the State Bar of Texas, and (2) appellant informed the trial court that his trial counsel had met with him on only two occasions during his representation of appellant and that during those meetings his counsel only attempted to get appellant to enter a plea of guilty rather than speaking to appellant about his case.[3]

First, on the record before voir dire, appellant's trial counsel acknowledged that appellant had filed a grievance against him, but stated that this grievance had been dismissed without counsel's even responding to it. Appellant acknowledges in his brief that the filing of a civil action against a court-appointed attorney is not a *per se* conflict of interest warranting disqualification of counsel. *See McKinnney v. State*, 76 S.W.3d 463, 478 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (en banc) (citing *Dunn v. State*, 819 S.W.2d 510, 519 (Tex. Crim. App. 1991)). Such a *per se* rule would allow an appellant to indefinitely delay trial by filing serial grievances against court-appointed attorneys. *Id.* Thus, this allegation is not sufficient to establish a conflict of interest, especially in light of the fact that it had been dismissed prior to the beginning of appellant's trial. *See id.*

Regarding appellant's second allegation, appellant has provided no authority suggesting that these factors establish an actual conflict of interest. Appellant has not indicated how his counsel's alleged two in-person meetings with him and his counsel's encouraging him to enter a guilty plea advanced counsel's interests to the detriment of appellant's interests. *See Acosta*, 233 S.W.3d at 355. There is simply nothing in these allegations that indicates an actual conflict of interest. Further, appellant's counsel stated that, although appellant had been uncooperative, he was "prepared to go" and had "seen

---

[3] It appears that appellant was offered a plea deal in which he would have received an eighteen-year sentence on the charge of aggravated robbery at issue here, with dismissal of charges of aggravated robbery in a companion case that was offered during the punishment phase of this case as an extraneous offense.

all the videos," "read all the offense reports," and was "ready for trial." The trial court noted that appellant had already been permitted to substitute appointed counsel once because he and his previous appointed counsel "weren't getting along."[4] The court further noted that appellant had been "hard headed and obstructive to work with," but that his trial counsel was "professional" and was "going to do his best" for appellant.

Under these circumstances, appellant has failed to establish that an actual conflict of interest existed between him and his trial counsel. *See id.*; *see also Tutt v. State*, 339 S.W.3d 166, 174 (Tex. App.—Texarkana 2011, pet. ref'd) (concluding trial court did not err in determining that actual conflict of interest did not exist because the alleged conflict would not have required appointed trial counsel to choose between advancing appellant's interests or advancing other interests to the detriment of appellant's interests). We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.


/s/     Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[4] Appellant's prior appointed counsel filed a motion to withdraw because appellant "wishe[d] to be appointed a new attorney," which was granted by the trial court on February 24, 2011. Counsel who represented appellant at trial was appointed on February 25, 2011. In May 2011, appellant filed a pro se motion to dismiss his new court-appointed attorney based on actions his counsel allegedly took in the companion aggravated robbery case discussed *supra* in note 3. The trial court denied this motion May 24, 2011, and appellant's trial commenced on September 28, 2011. Nothing in our record indicates that appellant raised any complaints regarding his trial counsel between May and the start of his trial in September.