Reversed and Remanded and Opinion filed September 23, 2004









Reversed and Remanded and Opinion filed September 23,
2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00738-CR

____________

 

PATRICK ONYANGO
KOMBUDO,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 928,748

 



 

O P I N I O N








Appellant, Patrick Onyango Kombudo, was
initially charged with the felony offense of delivery of a controlled
substance.  He was released with bail on
the condition that he would subsequently appear in the trial court.  When he failed to appear in accordance with
the terms of his release, appellant was charged by indictment with felony bail
jumping and failure to appear.  See Tex. Pen. Code Ann. ' 38.10 (Vernon
2003).  Appellant entered a plea of Anot guilty,@ but after
considering the evidence a jury convicted appellant of felony bail jumping and
failure to appear as charged in the indictment. 
The jury subsequently assessed appellant=s punishment at
confinement in the penitentiary for a term of 7 years and a fine of $7,000.

In seven points of error, appellant
contends: (1) the trial court violated his Sixth Amendment right to
self-representation; (2) the trial court violated his right to
self-representation guaranteed by the Texas Constitution; (3) the evidence was
factually insufficient to support his conviction; (4) the evidence was legally
insufficient to support his conviction; (5) appellant was harmed by the State=s introduction of
extraneous offense evidence; (6) the trial court erred in not quashing the
indictment; and (7) appellant was harmed by the State=s improper
introduction of extraneous offense evidence during the punishment phase of his
trial.

Legal Sufficiency of the Evidence

The record reflects that on June 20, 2002,
appellant obtained a $5,000 bail bond to secure his release from custody in
cause number 914,733 which was then pending in the 351st District
Court.  On June 28, 2002, appellant
appeared in the 351st District Court without counsel, and the case
was reset until July 16, 2002.  On July
16, appellant again appeared without counsel, and the case was reset until August
14, 2002.  On August 14, appellant again
appeared without counsel, and the case was reset until August 29, 2002.  On August 29, 2002, appellant failed to
appear, his bond was forfeited, and a warrant was issued for his arrest.

On October 20, 2002, Houston Police
Officer John Parker stopped appellant=s vehicle because
he was wearing no seat belt, he had an expired vehicle registration, he failed
to drive in a single lane of traffic, and Officer Parker suspected he was
driving while intoxicated.  Appellant
claimed he had no driver=s license or insurance on the
vehicle.  Officer Parker, however,
quickly discovered that appellant had an outstanding warrant, and he placed
appellant under arrest.








Appellant testified in his own
defense.  He explained that he failed to
appear in court on August 29, 2002, because he slipped and fell while at a
restaurant that day.  Appellant said he
was transported by ambulance to Memorial Hermann Hospital.  After taking pain medication, appellant said
he fell asleep on a couch at the hospital and did not leave until 3:00
p.m.  Appellant offered medical records
establishing his admittance to the hospital at 8:31 a.m. on August 29,
2002.  However, appellant admitted that
he had access to a telephone while at the hospital and did not attempt to contact
the court.  Appellant also admitted that
he made no attempt after August 29, 2002, to appear in the 351st
District Court.

Appellant contends the evidence is legally
insufficient because it Ais a defense to prosecution [for bail
jumping and failure to appear] that the actor had a reasonable excuse for his
failure to appear in accordance with the terms of his release.@  Tex.
Pen. Code Ann. ' 38.10 (c) (Vernon 2003).  Appellant also argues that he had no
obligation to appear in the 351st District Court after his bond had
been forfeited and a warrant issued for his arrest.  Appellant cites no authority for this
contention, and we reject it for the following reasons.[1]

First, the trial court has the power to
reinstate a bond after it has been forfeited. 
See Queen v. State, 842 S.W.2d 708, 712 (Tex. App.CHouston [1st
Dist.] 1992), aff=d, 877 S.W.2d 752
(Tex. Crim. App. 1994); Meador v. State, 780 S.W.2d 836, 836B37 (Tex. App.CHouston [14th
Dist.] 1989, no pet.).  Thus, appellant
could have sought reinstatement if he had promptly notified the trial court of
his accident.








Second, by the terms of his bail bond,
appellant was obliged to make his personal appearance before the 351st
District Court or any court to which the cause might be transferred Afor any and all
subsequent proceedings that may be had relative to [the charge of possession of
a controlled substance], and there remain from day to day and term to term of
said courts, until discharged by due course of law.@  Here, the pending charge for which appellant
was on bail was not discharged by due course of law by his failure to
appear.  Accordingly, appellant had a
continuing obligation to report to the trial court even after his bond was
forfeited.

Third, appellant is afforded a defense to
prosecution only if he has Aa reasonable
excuse for his failure to appear.@  We do not construe the statute to mean that
appellant need only have a Areasonable excuse@ at the precise
moment his name was called in the trial court. 
Rather, we find that a Areasonable excuse@ must encompass
the entire time appellant was absent from the court, i.e., from the time
his name was called in the courtroom to the time he was ultimately apprehended
or appeared in court.

Accordingly, we find the evidence is legally
sufficient to support the judgment. 
Appellant=s fourth point of error is overruled.

Right to Self-Representation

After appellant was arrested and returned to the trial
court, the district judge appointed counsel for appellant.  However, on March 28, 2003, appellant filed a
pro se motion entitled AMotion to Dismiss Court Appointed Attorney
and Appoint a New Counsel to Act on Behalf of Defendant.@  In this motion, appellant never mentioned any
desire to proceed pro se;  he merely
requested that new counsel be appointed to defend him.  However, a criminal defendant is not entitled
to appointed counsel of choice.  Dunn
v. State, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991).  Accordingly, the trial judge denied appellant=s motion
immediately prior to trial.  Appellant
then made a request to represent himself:

THE COURT:  All right, we=re here on Cause No. 928748, State
of Texas versus Patrick Kombudo.  Mr.
Kombudo has been indicted for the felony offense of bail jumping.  There is a jury in the hallway and it=s time to go to trial.








Mr. Kombudo filed a motion to
dismiss Mr. Moore from this case.  That
motion will be denied.  We=re going to trial.

MR. MOORE [appellant=s counsel]:  Judge, can I get him on the record?

I did bring you in two sets of
business suits for you to look at this morning to wear?

THE DEFENDANT:  Yes.

MR. MOORE:  And you did look at them and decided you want
to go to trial in your street clothes, what you have on C you want to wear what you have on?

THE DEFENDANT:  I would like to go to trial with what I have
on.

Sir, I cannot go pro se?

THE COURT: 
No, we=re going to trial.

(Emphasis added). 
Thereafter, a jury was selected, instructed to return on Monday morning,
and released for the weekend.

On Monday morning, a visiting judge was assigned to conduct
the trial.  Before the jury was sworn,
appellant approached the visiting judge and again asked to be allowed to
represent himself:

THE DEFENDANT:  Excuse me, Your Honor.

THE COURT:  Yes, sir.

THE DEFENDANT:  May I approach the bench?  I=d like to show you a letter, please, Your Honor.

THE COURT:  I beg your pardon?

THE DEFENDANT:  I=d like to show you this letter, Your Honor.

THE COURT:  All right, sir.

* 
*  *

THE COURT:  Is this something that you have seen?

MS. COOK [the State=s attorney]:  Yes.








MR. MOORE:  This is my letter to him about what to do
with this case.  You have not seen this
one.

THE COURT:  I=m not going to read it without the prosecution reading it
and I=m not sure that you want the
prosecution reading a letter that your lawyer has written to you.

THE DEFENDANT:  It shows a conflict of interest on my lawyer
in this case.  He wrote me a letter
saying that he does not C

THE COURT:  I=m not going to look at that letter, sir.  That would be a violation of the
attorney-client privilege because I would have to show the prosecution that letter.

THE DEFENDANT:  I don=t have any objection, Your Honor, to show the
prosecution.  I do not want the attorney
representing me in the case because he has a conflict of interest.  He has written to me saying that I do not
have a defense.  And that does not make
any sense to me.  I would like to
proceed pro se and I=m hoping to work with the jury.

THE COURT:  Well, sir C

MR. MOORE:  Judge, just for the Court=s information, Judge Ellis has
already denied a motion for him to proceed pro se on Friday.

THE COURT:  Very good.

THE DEFENDANT:  I did not include this in the motion,
though.  This is a new letter that I just
got.

MR. MOORE:  He had that letter Friday and mentioned it to
the Judge.

THE COURT:  I=d like to have the Prosecutor see the letter.  You=re making a big mistake, sir.

THE DEFENDANT:  I have been trying to make this known but he
put it in a letter form.

THE COURT:  You=re making a big mistake.

THE DEFENDANT:  I am aware, ma=am.

THE COURT:  All right.

MR. MOORE:  The typing C he has written all over it.  The typing is mine.

MS. COOK:  Thank you, Your Honor.








THE COURT:  I=ll look at it.

All right, sir.  Mr. Kombudo?

THE DEFENDANT:  Yes, ma=am.

THE COURT:  I have known Mr. Moore for probably two
decades, worked with him frequently when I was on the bench as a presiding
Judge.  I appointed him frequently
because he always had the best interest of his clients in his mind and heart
and he continually did an excellent job for his clients.

And when his clients listened to
his advice, paid attention to his advice, it was always, always without
exception in their best interest.

Judge Ellis has denied your request
to represent yourself and Judge Ellis is a very experienced Judge and I
certainly agree with his ruling.

We=re going to trial.  We=re going to bring the jury in.  I want to caution you, sir, that you must not
make any kind of outburst during the trial, no disturbance of any kind.  It=s very important that you pay attention to me.

[The defendant is carefully
admonished regarding the court=s power of contempt.]

So, I want you to preserve the
dignity of this Court by behaving in a dignified and respectful manner.  And at this point do you understand me?

THE DEFENDANT:  I understand. 
I don=t have the right to represent
myself; is that correct?

THE COURT:  That=s correct.  Judge Ellis has ruled on that issue.  So, we=re now going to trial and Mr. Moore is representing
you.  And you=re very fortunate that Mr. Moore
was appointed for you.

So, with that, we=re going to go to
trial and you may be seated at this time.

(Emphasis added).

In his first and second points of error,
appellant contends the trial court violated his right to self-representation
under both the federal and state constitutions. 
We agree.








The Sixth Amendment of the United States Constitution
provides that in all criminal prosecutions, the accused shall enjoy the right Ato have the
assistance of counsel for his defense.@  U.S.
Const. amend. VI.  As applied to
the states via the Fourteenth Amendment, the Supreme Court of the United States
has held that the Sixth Amendment guarantees to the accused the right to
self-representation.

The Sixth Amendment does not provide merely that a defense
shall be made for the accused; it grants to the accused personally the right to
make his defense. It is the accused, not counsel, who must be >informed of the
nature and cause of the accusation,= who must be >confronted with
the witnesses against him,= and who must be
accorded >compulsory process for obtaining witnesses
in his favor.= Although not stated in the Amendment in
so many words, the right to self‑representationCto make one=s own defense
personallyCis thus necessarily implied by the
structure of the Amendment.  The right to
defend is given directly to the accused; for it is he who suffers the
consequences if the defense fails.

Faretta v. California,  422 U.S. 806, 819B820 (1975).

We recognize the right to self‑representation
is not absolute.  Munkus v. Furlong,
170 F.3d 980, 984 (10th Cir. 1999).  For
example, if a defendant first asserts his right to self‑representation
after trial has begun, the right may have been waived.  The decision at that point whether to allow
the defendant to proceed pro se at all or to impose reasonable conditions on
self‑representation rests in the sound discretion of the trial
court.  United States v. Singleton,
107 F.3d 1091, 1099 (4th Cir.), cert. denied, 522 U.S. 825 (1997).  Moreover, the defendant=s request to conduct
his own defense must be unequivocal and not a tactic to secure delay in the
proceedings.  United States v. Smith,
780 F.2d 810, 811 (9th Cir. 1986). 
Further, the right of self‑representation is not a license to
abuse the dignity of the courtroom, and the trial judge may terminate
self-representation by a defendant who deliberately engages in serious and
obstructionist misconduct.  Faretta,
422 U.S. at 834.








Here, appellant made his initial request
for self-representation on the eve of trial immediately prior to the
commencement of voir dire.  He made a
second request after voir dire, but before the jury was sworn.  The State contends the second request was not
timely.  However, if Athere is to be a
Rubicon beyond which the defendant has lost his unqualified right to defend pro
se,@ it is at the
beginning of the defendant=s trial Awhen the jury is
empaneled and sworn.@  Chapman v. United State, 553 F.2d 886,
894 (5th Cir. 1977) (emphasis added). 
Thus, appellant=s second request for self-representation
was timely.  However, even if we were to
hold that the second request was not timely, there can be no question that his
first request was Abefore trial@ and, thus,
timely.  Moreover, there was nothing
equivocal about appellant=s desire to proceed pro se.  Finally, nothing in the record suggests
appellant sought a continuance or other delay in the proceedings.

It is undeniable that in most criminal
prosecutions defendants could better defend with counsel=s guidance than by
their own unskilled efforts. But where the defendant will not voluntarily
accept representation by counsel, the potential advantage of a lawyer=s training and
experience can be realized, if at all, only imperfectly. To force a lawyer on a
defendant can only lead him to believe that the law contrives against him.  Faretta, 422 U.S. at 834.  Here, we find the trial court denied
appellant=s right of self-representation.   Moreover, since the right of self‑representation
is a right that, when exercised, usually increases the likelihood of a trial
outcome unfavorable to the defendant, its denial is not amenable to Aharmless error@ analysis. The
right is either respected or denied; its deprivation cannot be harmless.  McKaskle v. Wiggins, 465 U.S. 168, 177
(1984).








Finally, the Texas Constitution is more
explicit than the Sixth Amendment.  It
provides that in all criminal prosecutions the accused shall Ahave the right of
being heard by himself or counsel, or both.@  Tex.
Const. art. I, ' 10. 
The request to proceed pro se is timely if it is asserted before the
jury is empaneled.  See McDuff v.
State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997).  The right of self-representation must be
honored so long as the assertion of the right is unconditional and not asserted
to disrupt or delay the proceedings.  Ex
parte Winton, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992).  Moreover, a defendant=s clear and
unequivocal request for self‑representation, followed by an unmistakable
denial of that right, is sufficient to preserve the alleged error.  See Funderburg v. State, 717 S.W.2d
637, 642 n.6.  (Tex. Crim. App. 1986).

Appellant=s first and second
points of error are sustained. 
Accordingly, we need not address appellant=s remaining points
of error.  The judgment of the trial
court is reversed and the cause is remanded for a new trial.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed September 23, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
C Tex. R. App. P. 47.2(b).











[1]  In evaluating a legal sufficiency
challenge, we view the evidence in the light most favorable to the verdict and
determine whether a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
n.12 ( 1979); Garrett v. State, 851 S.W.2d 853, 857 (Tex. Crim. App.
1993).  We will not overturn the verdict
unless it is irrational or unsupported by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846
(Tex. Crim. App. 1991).  If any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt, the evidence is legally sufficient to sustain the conviction.  McDuff v. State, 939 S.W.2d 607, 614
(Tex. Crim. App. 1997).