NUMBER 13-03-027-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


FERNANDO CARRILLO, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 

On appeal from the 148th District Court of Nueces, Texas.

 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Chief Justice Valdez


 

Appellant, Fernando Carrillo, was convicted by a jury of one count of murder in the
first degree and two counts of aggravated assault in the second degree. Tex. Pen. Code
Ann. § § 19.02 (Vernon 2003), 22.02, (Vernon Supp. 2006). Punishment was assessed
at a prison sentence of ninety-nine years for the murder conviction, twenty years for each
count of aggravated assault, and a $30,000 fine. Id. § § 12.32, 12.33 (Vernon 2003). By
two issues, Carrillo asks us to determine whether the trial court erred in (1) proceeding to
trial without first making a judicial determination that Carrillo was competent, as required
by article 46.02, section 5(i) of the Texas Code of Criminal Procedure, and (2) finding that
Carrillo had the intellectual capacity to knowingly and intelligently waive his right to counsel
and allowing him to represent himself without obtaining further psychological or psychiatric
evaluation. We affirm the trial court's judgment.I. BACKGROUND

A. Factual Background


 On February 4, 2001, Carrillo shot and killed Joseph Valles and shot at Esmeralda
and Felipe Nieto. Carrillo and the Nietos were neighbors and had been engaged in a
property dispute for several years. Valles lived next to the Nietos and was their son-in-law. 
On the day of the shooting, Valles was working in his yard when he noticed Carrillo
throwing beer cans and rocks at the Nietos' house. Valles asked Carillo to stop throwing
objects at the house. When Valles turned to walk away, Carrillo shot him from behind. 
Valles fell to the ground. Carrillo shot Valles again in the back. After shooting Valles,
Carrillo shot at the Nietos. The bullets missed the Nietos, but some bullets struck their
house and automobile. Carrillo walked back to his house and attempted to hide the gun
in a dog house. When he was apprehended by the police, Carrillo claimed he erupted. 
He was charged with one count of murder and two counts of aggravated assault.

B. Procedural Background


 One of Carrillo's defense attorneys alleged he was not competent to stand trial and
filed a motion for psychiatric examination on May 2, 2001. The court appointed a
psychiatrist to examine Carrillo. The psychiatrist diagnosed Carrillo as suffering from
paranoia, delusions, and grandiose self-ideals. A competency trial was held before a jury
on February 14, 2002. The only witness was the court-appointed psychiatrist who testified
as to his diagnosis of Carrillo. The jury found Carrillo incompetent to stand trial, but also
found that there was a substantial probability he would attain competency within the
foreseeable future. Carrillo was ordered to obtain treatment at a state mental hospital. 

 On May 10, 2002, a report ("the report") by a facility psychologist, which was signed-off and sworn to by the chief psychiatrist of the facility's competency program, was sent to
the district court. The report stated that Carrillo had become competent and could assist
an attorney with his case. Upon receiving the report, the trial judge ordered Carrillo
recalled from the state mental hospital to jail so that he could stand trial. After recalling
Carrillo, the trial judge recused herself, and a new trial judge was appointed. Carrillo
appeared before the new trial judge on October 11, 2002, for a pretrial hearing and
requested the right to represent himself. The trial judge warned Carrillo of the
disadvantages of self representation, but Carrillo insisted on representing himself. The trial
judge granted Carrillo's request, but appointed standby counsel to provide Carrillo with
legal advice and to takeover the defense should Carrillo's self-representation become
unsound. 

 The trial court held two more pretrial hearings on October 31, 2002 and December
9, 2002. In between the two hearings, a psychiatric examination was ordered. Carrillo
refused to cooperate with the court-appointed psychiatrist; the trial court proceeded to trial
without the results of a further psychiatric exam. Carrillo was convicted by a jury on all
three counts on December 12, 2002.

 The instant case was submitted to this Court once before and abated. See Carrillo
v. State, No. 13-03-027-CR, 2005 Tex. App. LEXIS 6022 at *6 (Tex. App.-Corpus Christi-Edinburg July 28, 2005, no pet.) (not designated for publication). We abated the case
because nothing in the record or trial transcripts showed that the psychiatric report was
furnished or served to Carrillo in any fashion. See id. at *5; see also former Tex. Code
Crim. Proc. Ann. art. 46.02, § 5(i) (1); Schaffer v. State, 583 S.W.2d 627, 630 (Tex. Crim.
App. 1979). After the abatement, the trial court filed findings of fact stating that (1) the
Nueces County District Attorney's Office was served with or received a copy of the
competency report on May 15, 2002, (2) Carrillo's attorney at the time was aware of,
informed of, or received a copy of the same report prior to May 21, 2002, and (3) Carrillo's
attorney was afforded the opportunity within fifteen days to object to the findings in the
report. The case was reinstated on October 5, 2005.

II. DISCUSSION

A. Judicial Determination of Competency


 By his first issue, Carrillo claims that the trial court erred in proceeding to trial without
first making a judicial determination that he was competent, as required by article 46.02,
setion 5(i) of the Texas Code of Criminal Procedure. Carrillo argues that he was denied
a competency hearing, a judicial determination of his competency, service and fifteen days'
notice of the psychiatric report, and an opportunity to file objections to the report. See
Fuller v. State, 11 S.W.3d 393, 394 (Tex. App.-Texarkana 2000, pet. ref'd); Byrd v. State,
719 S.W.2d 237, 238 (Tex. App.- Dallas 1986, no pet.); see also Bell v. State, 814 S.W.2d
229, 232 (Tex. App.-Houston [1st Dist.] 1991, pet. ref'd). Carrillo contends that the filing
of the psychiatric report does not obviate the need for a judicial determination of his
competency to stand trial. See Schaffer, 583 S.W.2d at 630. He asked us to abate the
appeal and return the case to the trial court for a judicial determination of competency. 

 Former article 46.02 of the Texas Code of Criminal Procedure sets forth explicit
instructions on how an incompetency hearing must be initiated and what procedures must
be followed. Tex. Code Crim. Proc. Ann. art. 46.02 § 5(a). A person judicially declared
incompetent to stand trial may be ordered to obtain treatment at a designated facility for
a period no longer than eighteen months or until the head of the facility medically
determines that the person is competent to stand trial. Id. If the head of the facility
determines the person to be competent, he must notify the court by affidavit. Id. at art.
46.02, § 5(f). After such notification, the person shall be transferred back into the
committing court's custody within fourteen days. Id. at art. 46.02, § 5(g). In making a
judicial determination of competency, the court is allowed to rely solely on the report issued
by the head of the facility. Id. at art. 46.02, § 5(i). However, both parties are entitled to
copies of the report and to make an objection "in writing or in open court to the findings of
the report within fifteen days from the time the report is served on the parties." Id. 

 Contrary to Carrillo's assertion, a judicial determination of Carrillo's competency to
stand trial was made before the trial began. At the December 9, 2002 pretrial hearing, the
new trial judge stated that he considered Carrillo competent to stand trial despite Carrillo's
refusal to cooperate with a psychiatrist for the fall 2002 exam. Furthermore, during the
trial, the prior trial judge was asked if a judicial or administrative determination of
competence was made. She answered that Carrillo was competent to stand trial and that
after she received the psychiatric report she recalled Carrillo from the mental health facility
back to jail. The instant case, therefore, presents evidence of a judicial determination of
Carrillo's competency to stand trial. Cf. Schaffer, 583 S.W.2d at 630 (abating an appeal
because the record did not contain a judgment, order, docket sheet entry, or other
evidence that the trial court ever made a determination of competency after the appellant's
return from a mental health facility.). 

 We abated Carrillo's appeal and returned this case to the trial court because nothing
in the record or trial transcripts showed that the psychiatric report was furnished or served
to Carrillo in any fashion. See id.  The trial court has since filed findings of fact, stating that
(1) the Nueces County District Attorney's Office was served with or received a copy of the
competency report on May 15, 2002, (2) Carrillo's attorney at the time was aware of,
informed or, or received a copy of the same report prior to May 21, 2002, and (3) Carrillo's
attorney was afforded the opportunity within fifteen days to object to the findings in the
report. The record does not contain a timely objection to the report.

 In the instant case, the trial court made a judicial determination that Carrillo was
competent in accordance with article 46.02, section 5(i) of the Texas Code of Criminal
Procedure. The necessary parties received the psychiatric report; and the necessary
parties did not timely object to the report. Therefore, Carrillo's first issue is overruled.

B. Right to Self-Representation


 Carrillo's second issue is that the trial court erred by finding that he had the
intellectual capacity to knowingly and intelligently waive his right to counsel and in allowing
him to represent himself without obtaining further psychological or psychiatric evaluation. 
Carrillo contends that (1) he suffered from paranoid personality disorder and delusional
disorder, (2) both mental disorders can degrade an otherwise normal intelligence, and (3)
his mental disorders prevented him from making an intelligent waiver of his right to
counsel. Carrillo claims that his mental disorders are evidenced by the February 14, 2002
determination that he was incompetent to stand trial (but with a substantial probability he
would attain competency within the foreseeable future) and by his sometimes irrational
behavior. (2) In essence, Carrillo argues that he was incompetent and could therefore not
knowingly and intelligently waive his right to counsel. 

 The competency standard for waiving the right to counsel at a criminal trial is the
same as the underlying competency to stand trial. Ex parte Mines, 26 S.W.3d 910, 912
(Tex. Crim. App. 2000) (citing Godinez v. Moran, 509 U.S. 389, 399 (1993)). In dealing
with self representation and competency issues, whether the defendant is competent to
represent himself is immaterial; the appropriate question is whether he is competent to
choose the endeavor. Dunn v. State, 819 S.W.2d 510, 522 (Tex. Crim. App. 1991). We
have already held that procedurally, the trial court made a proper judicial determination that
Carrillo was competent to stand trial. Despite Carrillo's assertions of irrational behavior
before and during trial, a challenge to the substance of the trial court's judicial
determination of competency is not properly before us. Tex. R. App. P. 38.1(h) (stating that
a brief must contain a clear and concise argument for the contentions made, with
appropriate citation to authorities and to the record.). 

 The next step in our inquiry is to determine whether Carrillo knowingly and
intelligently chose to represent himself. The Sixth and Fourteenth Amendments to the
United States Constitution guarantee that a person brought to trial in any state or federal
court shall be afforded the right to assistance of counsel. Faretta v. California, 422 U.S.
806, 807 (1975). By the same authority, federal and state defendants are also possessed
of the right to dispense with counsel in favor of self-representation. Id. at 814. A
defendant's waiver of counsel passes constitutional muster if it is made competently,
knowingly and intelligently, and voluntarily. Id. at 834-36. To competently and intelligently
invoke the right to self-representation, a defendant "should be made aware of the dangers
and disadvantages of self-representation, so that the record will establish that 'he knows
what he is doing and his choice is made with eyes open.'" Scarbrough v. State, 777
S.W.2d 83, 92 (Tex. Crim. App. 1989) (citing Faretta, 422 U.S. at 835). Generally, the
record must be sufficient for the reviewing court to make an assessment that the appellant
knowingly exercised his right to defend himself. Johnson v. State, 760 S.W.2d 277, 279
(Tex. Crim. App. 1988).

 The record shows that the trial court thoughtfully addressed Carrillo's request to
proceed pro se. Before it granted his request, the trial court questioned Carrillo regarding
his age, education, understanding of the charges against him, and prior court experience. 
Carrillo responded that he had been in court twice before, the first time for a DWI charge
and the second for an uncontested divorce, that he understood English, was able to read
and write, and that he understood the charges against him. The trial court told Carrillo that
he was making a mistake by requesting to represent himself and then informed him of the
many disadvantages of self representation. Carrillo acknowledged the disadvantages and
insisted on representing himself. 

 After carefully apprising Carrillo of the risks of self representation, the trial court
allowed him to represent himself. But, out of an abundance of caution, the trial court
appointed standby counsel. Before the trial, Carrillo's standby counsel conducted voir dire. 
During the trial, he answered questions that Carrillo posed to him and suggested questions
for Carrillo to ask. Thus, standby counsel was an active participant in the proceedings. 

 On this record, we find that Carrillo was adequately admonished regarding the
dangers and disadvantages of self-representation. See Blankenship v. State, 673 S.W.2d
578, 583 (Tex. Crim. App. 1984) (holding that there is no formulaic questioning to establish
a knowing and intelligent waiver, but that a trial court "must investigate as long and as
thoroughly as the circumstances of the case before him demand," and quoting Von Moltke
v. Gillies, 332 U.S. 708, 723 (1948)); see also Dunn, 819 S.W.2d at 522 ("While the choice
[of self representation] must be knowingly and intelligently made, it need not be wise."). 
Accordingly, Carrillo's second issue is overruled. 

III. CONCLUSION

 The trial court's judgment is affirmed.

 

 

 ROGELIO VALDEZ

 Chief Justice

Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 12th day of October, 2006.
1. Although Article 46.02 has been repealed, it continues to apply in proceedings that were initiated
before January 1, 2004. Act of May 29, 1975, 64th Leg., R.S., ch. 415, 1975 Tex. Gen. Laws 1095-96
(henceforth former Tex. Code Crim. Proc. Ann. art. 46.02"), repealed by Act of May 2, 2003, 78th Leg.,
R.S., ch. 35, § 15, 2003 Tex. Gen. Laws 57, 72 (current version at Tex. Code Crim. Proc. Ann. art. 46B
(Vernon Supp. 2006)). 
2. An example of Carrillo's irrational behavior occurred during the hearing to determine whether he
could represent himself. During that hearing, Carrillo asked the court whether a city councilman, a U.S.
Congressman, and the Texas Attorney General could assist him. Carrillo apparently believed that they
were rallying to his defense.