# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00359-CR

**Dion Lamichea Weeks, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-07-122, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Dion Lamichea Weeks of the offense of possession of a controlled substance, cocaine, in an amount of four grams or more but less than two hundred grams. Punishment was assessed at twenty years' imprisonment. In three points of error, Weeks claims ineffective assistance of counsel, asserts that the district court abused its discretion in admitting expert testimony about Weeks's "intent to deliver" the cocaine, and contends that the district court abused its discretion during punishment in admitting evidence of an extraneous offense for which the State failed to provide required notice.[1] We will affirm the judgment.

---

[1] After appellate counsel filed a brief on Weeks's behalf, we received two pro se motions from Weeks expressing dissatisfaction with his appointed appellate counsel and her brief, and requesting the appointment of new counsel and to have counsel's brief "annulled." We overrule the pro se motions. *See Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004) (no right to hybrid representation); *Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991) (no right to appointed counsel of choice).

## BACKGROUND

On December 14, 2006, Sergeant Wade Parham of the San Marcos Police Department stopped a vehicle driven by Weeks for traffic violations. Parham activated his patrol car camera as Weeks was pulling over. The audio and video recording, with some redactions, was played to the jury at trial and made a part of the record, and reflects the following sequence of events.

Parham approached Weeks's car and informed Weeks that he was being stopped because he had been speeding. Weeks responded by explaining that he had been trying to pass another vehicle in order to make a right-hand turn. Weeks also volunteered that the car he was driving belonged to his girlfriend. Parham obtained Weeks's driver's license and informed Weeks that he would check the license and, "if everything's in order," issue him a warning. Parham returned to his patrol car, where he is heard communicating with dispatch and ascertaining that Weeks had outstanding arrest warrants related to unpaid traffic tickets. Parham then returned to Weeks's car, informed Weeks that he had outstanding warrants from San Marcos for speeding and failure to appear, and placed him under arrest. As Parham was preparing to place him in handcuffs, Weeks requested to call "my friend" on his cell phone to make arrangements to pick up the car. Weeks reiterated that the car belonged to his girlfriend, adding that she needed the car to get to work by midnight that evening. Parham agreed that these arrangements would be preferable to having the car towed, and permitted Weeks to make his call. Weeks is heard informing an unidentified person that he needed to come get the car because Weeks was being picked up on outstanding warrants, requesting that he take it to his house until "Tia" could pick it up, and giving directions to his location. Weeks was then permitted to make a second call, to "Tia"—later identified as his then-

2

girlfriend, Tia Mahan—informing her that he was going to jail and that "Micah" would have her car at his house. After Weeks completed this call, Parham placed him in handcuffs.

Parham then began conducting a search of Weeks's person incident to arrest. Parham asked Weeks whether he had any weapons or "anything illegal" on his person, to which Weeks responded, "Not that I know of" and "I don't believe so." Parham inquired whether someone could have left something on Weeks's person without him knowing it. Weeks then represented that the jeans he was wearing did not belong to him. Shortly thereafter, Parham found a small item in Weeks's pocket that caused Weeks to exclaim, "Oh, sh*t!" It is undisputed that this item was a small baggie containing what proved to be .37 grams of cocaine.

Parham then placed Weeks in the back of his patrol car. Shortly thereafter, a man approached who was later identified as Micah Franks, the friend whom Weeks had called earlier to pick up the car. For several minutes, the recording shows images of a backup officer searching the car while Franks stood in the street nearby. The recording is accompanied by audio of both the officers speaking to one another outside the car and a cell phone call, on speaker phone, that Weeks somehow made to Ms. Mahan while handcuffed in the back seat of Parham's patrol car. Weeks is heard informing Mahan that the officers had found cocaine on him, begging Mahan (who is obviously displeased) not to "give up" on him, and urging her to help him make bail. Weeks further stated that "they're going to charge me with everything" and that he would go to jail for a long time "if they catch me." Later, as the search proceeds, Weeks observed that the officers were about to go through "my bag," then "they're getting ready to find the rest of the dope," and, as the officers react to the discovery, "they found the drugs." Weeks later states, "I'll just tell them that I'm a drug user."

3

It is undisputed that the search uncovered a green satchel bag containing a white plastic bag, which, in turn, contained narcotics paraphernalia, hundreds of small Ziploc baggies, and a cloth Crown Royal bag containing what proved to be a total of 6.39 grams of cocaine divided and packaged among eleven small Ziploc baggies. Parham later testified without objection that the Ziploc baggies were a type "commonly used for packaging drugs" and that the cocaine found in the Crown Royal bag was "all broken up for sale." Also found in the car was a set of digital scales, which Parham testified were commonly used for weighing drugs, and a marihuana pipe.

After finding the drugs, Parham decided to impound the car, and sent Franks on his way. Parham then read Weeks his *Miranda* rights. Thereafter, with little or no prompting from Parham, Weeks made numerous self-incriminating admissions to Parham, on tape, as the pair prepared to depart the scene and during their drive to the jail. Weeks divulged that, among other things, the Crown Royal bag contained about seven grams of cocaine, that he had just "picked up" two "eight-balls" of cocaine,[2] that this amount would last him about a month, and that he was "wired" and "high" from having ingested some of the cocaine earlier that evening. Weeks portrayed himself as a cocaine addict who had developed the habit during a "struggling" period of his life.

Weeks was indicted for possession of a controlled substance, cocaine, with intent to deliver in an amount greater than four grams but less than 200 grams, with an enhancement paragraph alleging that he had previously been convicted of the felony offense of robbery. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (West Supp. 2008), § 481.112(d) (West 2003);

---

[2] An "eight-ball" of cocaine, Parham later testified, refers to one-eighth of an ounce of cocaine, which is approximately 3.5 grams; thus, two eight-balls would equal roughly 7 grams.

Tex. Penal Code Ann. § 12.42 (West Supp. 2008). The central issue at trial concerned the inferences to be drawn from the patrol car videotape and evidence seized from the car. The State argued that the evidence established Weeks had been dealing the cocaine. Weeks, in contrast, sought to portray himself as merely a small-time user, not a dealer, who had spiraled downward into cocaine dependency following his father's death. Weeks also claimed that he had purchased less than one gram of cocaine that evening for his personal use, and that the larger quantity of cocaine found in the Crown Royal bag had actually belonged to Micah Franks, the friend who had come to pick up Tia Mahan's car following Weeks's arrest.

Weeks testified that he had purchased a single baggie of cocaine from Franks in a transaction taking place in the front seat of Mahan's car. According to Weeks, Franks departed the car suddenly and, unbeknownst to Weeks at the time, left behind a white plastic bag containing the Crown Royal bag and larger quantity of cocaine. Weeks testified that he used some of the cocaine from the baggie he had purchased, leaving the .37 grams later found in his pocket. While at a San Marcos bar, Weeks claimed that he received a series of insistent and threatening calls from Franks indicating that Franks had left some belongings in the car and demanding that Weeks return them. It was while driving the car to meet Franks and return his belongings that, Weeks claims, he was pulled over by Parham. Weeks claimed that he thereafter took responsibility for the drugs out of fear of the consequences if he snitched on Franks.

During his testimony, Weeks acknowledged that both the digital scales and marihuana pipe found in the car had belonged to him. He also admitted that he had known about the cocaine while driving the car to meet Franks. Weeks testified that after speaking with Franks, he went to the

5

car and found the cocaine. Earlier, Weeks revealed, he had viewed the contents of the Crown Royal bag and weighed various of the baggies of cocaine before making his purchase. Weeks further admitted that the green satchel bag in which the cocaine was found belonged to him, and that he had attempted to conceal Franks's white plastic bag inside it.

The district court submitted the charged offense and the lesser-included offense of possession of cocaine in an amount greater than four grams but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115(d) (West 2003). The jury acquitted Weeks of the possession-with-intent-to-distribute charge but convicted him of the lesser-included possession charge. During punishment phase, Weeks pled true to the allegation in the enhancement paragraph of his indictment that he had previously been convicted of robbery, and a certified copy of his judgment of conviction, from 1999, was admitted into evidence. It reflects that Weeks had pled guilty to the offense and been sentenced to six years in the TDCJ. The State also presented evidence of a 1998 misdemeanor theft conviction and two 1995 judgments imposing deferred adjudication for unauthorized use of a motor vehicle. The State also introduced evidence that, while out on bail in the present cause, Weeks had failed to appear in court and had also been charged with assault/family violence. The alleged victim, a former live-in girlfriend whom Weeks had met in 2007, testified that Weeks beat and choked her, then threatened her if she reported the assault to police. She also claimed that Weeks had used cocaine and smoked marihuana. Additionally, a San Marcos police officer testified that he had arrested Weeks for marihuana possession in 2007, when, during a traffic stop, Weeks volunteered that he had a bag of marihuana.

The jury was instructed that it should assess punishment at imprisonment for any term not more than 99 years or less than five years. *See id*.; Tex. Penal Code Ann. §§ 12.32, .33 (West 2003), .42(b). The jury assessed punishment at twenty years' imprisonment. The appeal followed.

## ANALYSIS

Before turning to Weeks's specific appellate complaints, we must note that Weeks essentially conceded during his testimony that he committed the offense for which he was convicted. To convict Weeks of the offense of possessing cocaine in an amount greater than four grams and less than 200 grams, the State was required to prove beyond a reasonable doubt that Weeks exercised actual care, custody, control, or management over the cocaine in the amount charged and knew the matter possessed was cocaine. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .115(a); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Weeks admitted at trial that he saw the cocaine contained in the Crown Royal bag, that he even compared and weighed some of the baggies before making his purchase, and that he tried to conceal the cocaine in his own satchel bag. Weeks admitted that he intentionally drove the car, knowing the cocaine was inside, to meet Franks and return the cocaine to him. On videotape, Weeks demonstrated his awareness that the cocaine was hidden in the car and that the total amount was approximately seven grams. This evidence establishes the elements of the offense of conviction: Weeks exercised actual care, custody, control, or management over the cocaine and knew the matter possessed was cocaine. Weeks does not challenge the sufficiency of the evidence supporting his conviction. It is in this procedural and evidentiary context that Weeks advances his appellate complaints.

7

**Expert testimony**

In his second point of error, Weeks complains that the district court abused its discretion in permitting Sergeant Parham to give expert testimony "regarding the appellant's intended purpose with respect to the cocaine." After Parham described the evidence obtained from Weeks' car—which included such things as "digital scales commonly used for weighing drugs," "hundreds" of "Ziploc baggies commonly used for packaging drugs," and "a bag containing over eight grams of cocaine in individual packages all broken up for sale"—Parham was permitted, over objection, to testify to the following opinions concerning inferences to be derived from this evidence:

> Q: Did you have any inferences or draw any conclusions from the evidence you collected that night about the purpose of the defendant's possession of cocaine?
>
> A: Based upon my training and years of experience, I believe that the amount of drugs recovered, the way that they were all broken up and packaged individually, the scales and the hundreds of small, empty baggies and those supplement pills, led me to believe that those drugs were intended for resale.
>
> Q: If they were intended for resale, would that be intended to deliver (sic)?
>
> A: The intent to deliver, yes.

Weeks complains on appeal that Parham was not qualified to testify as to whether Weeks had an "intent to deliver" the cocaine and that "no testimony was offered to show that Sgt. Parham had any specialized training in knowing how drug dealers package their drugs for sale or how to know if an individual was a drug dealer or merely a drug user." We need not determine whether the district court abused its discretion in admitting Parham's opinions regarding Weeks's intent to deliver because any error would be harmless. Among other things, Weeks was convicted of the

8

lesser-included offense of possession of a controlled substance, which does not require proof of intent to deliver. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .115(d). On this record, we cannot conclude that any error in admitting Parham's testimony affected Weeks's substantial rights. *See* Tex. R. App. P. 44.2(b); *Neal v. State*, 256 S.W.3d 264, 284-85 (Tex. Crim. App. 2008). We overrule Weeks's second point of error.

**Notice of extraneous offenses**

Prior to trial, Weeks requested prior notice of extraneous offenses that the State intended to introduce into evidence at trial. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g) (West Supp. 2008); Tex. R. Evid. 404(b). The State filed its notice of intent to introduce extraneous offense evidence on December 7, 2007, over four months before trial began. In the notice, the State listed the following offenses:

1. On or about June 19, 1995 in Travis County, Texas, the Defendant was arrested for the offense of Unauthorized Use of a Motor Vehicle.

2. On or about October 20, 1995, in Travis County, Defendant was charged with Reckless Driving by Travis County Attorney's Office.

3. In Cause No. 0980072, on or about February 9, 1998 in Travis County, Defendant was Convicted of Theft of Property Valued at $500 or More, But Less Than $1,500 and sentenced to one year's confinement in the Travis County Jail.

4. In Cause No. 0990548, on or about May 21, 1999 in Travis County, Defendant was Convicted of Aggravated Robbery and sentenced to Six Years Confinement TDCJ.

5. On or about November 30, 2006 in Travis County, Defendant was arrested for Driving While Intoxicated.

6.  On or about April 6, 2007 in Hays County, Defendant was arrested for Possession of Marijuana by Texas State University Police Department.

7.  On or about [] August 9, 2007 in [] Hays County, Texas, Defendant was arrested for Assault Bodily Injury/Family Violence and Unlawful Restraint by San Marcos Police Department.

8.  On or about [] July 18, 2007, in [] Hays County, Texas, Defendant . . . failed to appear in Cause No. CR-07-122 [the cause on appeal].

The State cross-examined Weeks regarding his robbery and theft convictions during the guilt-innocence phase of trial. During its punishment case-in-chief, the State again presented evidence about these convictions and that Weeks had been charged with family-violence assault, bail-jumping, and marihuana possession while his present cocaine charges were pending.

During punishment, Mahan testified on Weeks's behalf regarding the circumstances of the bail-jumping charge. She claimed that Weeks, in fact, had called her from court that day and that, upon learning of the charge, he had immediately turned himself in. During cross-examination, the State attempting to impeach Mahan's credibility as a witness in a position to know Weeks's whereabouts. As part of this line of questioning, the State asked Mahan if she was aware of Weeks's criminal history. Mahan answered in the affirmative. The State then asked, "You're aware in 1995 the defendant was convicted for two counts of unauthorized use of a motor vehicle?" This was the first time during trial that the State had mentioned this offense. Weeks's counsel objected and asked to approach. A colloquy followed in which Weeks's counsel ascertained that the State had certified copies of two deferred adjudication orders reflecting that Weeks had pled guilty to and received deferred adjudication for two counts of unauthorized use of a motor vehicle, committed on June 18 and July 18, 1995, in Travis County. The State represented that it had learned of the orders only on

10

the preceding Friday (Mahan was testifying on the following Monday) and had obtained copies only that morning. Although the State, as noted, had disclosed that Weeks had been *arrested* in Travis County on or about June 19, 1995, for unauthorized use of a motor vehicle, it had not disclosed the existence of either order. Weeks's counsel objected that the State had failed to give notice of the orders. The district court overruled the objection, and the orders were subsequently admitted into evidence.

In his third point of error, Weeks urges that the district court abused its discretion in admitting evidence of the two deferred adjudication orders on his 1995 charges for unauthorized use of a motor vehicle. Assuming without deciding that the district court abused its discretion in admitting evidence of these orders, we conclude it is harmless. The erroneous admission of evidence of an extraneous offense is not constitutional error. *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.). Accordingly, we must disregard the error unless it affects Weeks's substantial rights. *See* Tex. R. App. P. 44.2(b); *Roethel*, 80 S.W.3d at 281. When evidence is admitted in violation of article 37.07, section 3(g), we analyze the harm in light of the statute's intended purpose, which is to enable the defendant to prepare to meet the evidence of other offenses or convictions. *See Roethel*, 80 S.W.3d at 281; *see also Hernandez v. State*, 176 S.W.3d 821, 824-25 (Tex. Crim. App. 2005) (approving of harm analysis in *Roethel* and applying it to violation of rule 404(b) notice provision).

Weeks does not dispute that he was given proper notice of extraneous offenses that were more severe and closer in time than the 1995 charges for unauthorized use of a motor vehicle. These offenses include convictions for theft and aggravated robbery in 1998 and 1999, arrests for

11

driving while intoxicated and possession of marihuana in 2006 and 2007, an arrest for assault bodily injury/family violence in 2007, and a bail-jumping charge in this cause. Weeks's ability to prepare to meet these other, more serious offenses would not have been affected by the State's failure to provide notice of its intent to introduce the orders of deferred adjudication for the offense of unauthorized use of a motor vehicle. We also observe that the State did not emphasize this offense. The deferred adjudication orders were not introduced during the State's case-in-chief on punishment, and the prosecutor asked Mahan only one question about the offense—whether she was aware that Weeks had been "convicted" of it. In his closing argument, the prosecutor mentioned the offense only twice, focusing instead on the other extraneous offenses for which there was no dispute that Weeks received proper notice. On this record, we cannot conclude that Weeks was harmed by the State's failure to provide him with notice of its intent to introduce the deferred adjudications involving the offense of unauthorized use of a motor vehicle. *See Patton v. State*, 25 S.W.3d 387, 394 (Tex. App.—Austin 2000, pet. ref'd) (holding any error in admitting prior conviction for criminal mischief harmless when evidence of three other prior convictions for burglary, failure to identify, and evading arrest were admitted without objection).

We overrule Weeks's third point of error.

**Ineffective assistance of counsel**

Among the numerous admissions that Weeks made during his videotaped ride in Sgt. Parham's patrol car, he volunteered that "I went to the penitentiary at a young age," elaborating, "I got a robbery case down in Austin." Weeks was apparently referring to his 1999 robbery conviction for which he was sentenced to six years in the TDCJ. The record reflects that after this

portion of the videotape had already been played to the jury, Weeks's trial counsel objected and later moved for mistrial on the basis that evidence of Weeks's prior incarceration was inadmissible under rules 401, 403, 404(b), and 609, and extremely prejudicial. The district court overruled Weeks's objection and motion for mistrial.

In his first point of error, Weeks complains that his trial counsel rendered ineffective assistance by failing to get Weeks's admissions of prior incarceration excluded from evidence. He points to statements by his trial counsel suggesting that she believed a pretrial motion in limine, on which she never obtained a ruling, sufficed as an objection to the evidence. Weeks also emphasizes indicia that despite having a copy of the redacted version of the patrol car videotape that the State intended to present at trial, trial counsel never reviewed it before trial. He also complains that counsel never requested an instruction that the jury disregard Weeks's statements about incarceration.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense. *Id*. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The appellant has the burden to establish both of these prongs by a preponderance of the evidence. *See Jackson v. State*, 973 S.W.2d

954, 956 (Tex. Crim. App. 1998). Absent both showings, we cannot conclude that there has been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson*, 9 S.W.3d at 813.

Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Even assuming Weeks's trial counsel's performance was deficient, we cannot conclude, considering Weeks's numerous other self-incriminating admissions at trial and on videotape, previously discussed, that Weeks has met his burden of proving by a preponderance of the evidence that, but for the deficient performance, there is a reasonable probability that the outcome of the guilt-innocence phase of his trial would have been different. Weeks likewise fails to show how there is a reasonable probability his sentence would have been different if the jury had not heard this statement, given the considerable evidence of Weeks's robbery conviction and other extraneous offenses that the jury heard during punishment phase. We overrule Weeks's first point of error.

14

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 1, 2009

Do Not Publish